RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0365p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 10-3808

MARIO AGUILAR-DIAZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 10-00061-001—Sara E. Lioi, District Judge.

Argued: November 30, 2010

Decided and Filed: December 2, 2010

Before: BATCHELDER, Chief Judge; ROGERS and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Carlos Warner, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Akron, Ohio, for Appellant. Daniel R. Ranke, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Carlos Warner, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Akron, Ohio, Jeffrey B. Lazarus, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Daniel R. Ranke, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

ROGERS, J., delivered the opinion of the court, in which KETHLEDGE, J., joined. BATCHELDER, C. J. (p. 10), delivered a separate concurring opinion.

_____

## OPINION

_____

ROGERS, Circuit Judge. In calculating the advisory guidelines sentencing range for criminal defendant Mario Aguilar-Diaz, the district court below relied on a prior state conviction that Aguilar-Diaz contends should have been disregarded because the

1

conviction was void rather than merely voidable under a line of Ohio case law. However, because Aguilar-Diaz's challenge amounts to a collateral attack on his state conviction that is not permitted by the guidelines or federal case law, his sentence was procedurally proper.

Aguilar-Diaz pled guilty to a charge of illegal reentry after deportation, a violation of 8 U.S.C. § 1326. Under the federal sentencing guidelines, the base offense level for this crime is 8. U.S.S.G. § 2L1.2(a). Aguilar-Diaz's offense level was increased by 4 based on a 2003 Ohio felony conviction for forgery and tampering with records, U.S.S.G. § 2L1.2(b)(1)(D), and then reduced by 2 based on acceptance of responsibility. His final offense level was, therefore, 10. The prison sentence resulting from the forgery conviction also resulted in two additional criminal history points for Aguilar-Diaz, which his counsel argues elevated Aguilar-Diaz from a criminal history category of I to II.[1] With a base offense level of 10 and a history category of II, Aguilar-Diaz's advisory guidelines range was 8 to 14 months. U.S.S.G. § 5A. The district judge stated that the circumstances did not warrant departure from the guidelines range and imposed a sentence of 11 months.

At sentencing, Aguilar-Diaz argued that his state felony conviction should not have been considered in the calculation of his applicable guidelines range because that conviction is void. The district court rejected this argument as an impermissible collateral attack on a state conviction, prohibited by *Custis v. United States*, 511 U.S. 485 (1994). Had the court not considered Aguilar-Diaz's forgery conviction, he would have faced a base offense level of 6 and a criminal history category of either I or II. His recommended guidelines range would have been 0 to 6 months for Category I and 1-7 months for Category II.

Aguilar-Diaz argues that his forgery conviction is void because Ohio law defines a conviction as including both a finding of guilt and a sentence. He contends that he

---

[1] At one point in the sentencing hearing, the judge, prosecutor, and defense counsel all appeared to agree that even if the forgery conviction were not considered in determining Aguilar-Diaz's criminal history points, he would still have two points and would therefore in any event be in Category II. R.31 at 44-45. In light of our present ruling, we need not resolve this difference.

cannot have an Ohio conviction because the Ohio trial court did not properly impose post-release control as part of sentencing, thereby making his sentence void and eliminating one of the elements of a conviction.

By statute, all Ohio prison sentences for classified felonies must include notice to the offender that he will or may be subject to post-release control after leaving prison. Ohio Rev. Code § 2929.19(B)(3)(c)-(e); Ohio Rev. Code § 2967.28(B)-(C). This notice must be provided at the sentencing hearing and be included in the final judgment entry. *State v. Jordan*, 817 N.E.2d 864, 869 (Ohio 2004). The sentencing court must specify whether the term of post-release control is mandatory, the length of the term (or the maximum potential length if discretionary), and the possible consequences of violating post-release control. Ohio Rev. Code § 2929.19(B)(3)(c)-(e); Ohio Rev. Code § 2967.28(B)-(C).

Aguilar-Diaz's sentencing entry states: "Defendant given notice of appellate rights under R.C. 2953.08 and post release control notice under R.C. 2929.19(B)(3) and R.C. 2967.28." R.17-1 at 1-2. The entry does not provide any information as to whether post-release control is mandatory or discretionary, the length of post-release control, or the consequences of a violation of the terms of post-release control. Because the sentencing entry does not include this required information, Aguilar-Diaz contends that his sentence is void ab initio and therefore should not have been considered in calculating his guidelines range.

A string of recent Ohio Supreme Court decisions supports the proposition that Ohio sentences that fail to comply with the statutory requirements for imposing post-release control are void. *See Jordan*, 817 N.E.2d at 871; *State v. Simpkins*, 884 N.E.2d 568, 572 (Ohio 2008); *State v. Boswell*, 906 N.E.2d 422, 423 (Ohio 2009); *State v. Singleton*, 920 N.E.2d 958, 964 (Ohio 2009). Underlying all of these cases is *State v. Beasley*, 471 N.E.2d 774 (Ohio 1984) (per curiam), in which the trial court disregarded the statutory requirement of a mandatory minimum prison sentence and imposed only a fine on the defendant. The state sought to have Beasley resentenced in compliance with the statute, an act Beasley said would violate her right to be free from double

jeopardy. *Id*. at 774-75. The court concluded that "[a]ny attempt by a court to disregard statutory requirements when imposing a sentence renders the attempted sentence a nullity or void." *Id.* at 775. Because the sentence was void, the court held that jeopardy did not attach, and resentencing Beasley did not constitute double jeopardy. *Id.*

The Ohio Supreme Court applied *Beasley* in the post-release control context in *Jordan*, a case in which the trial court had failed to notify the defendants about post-release control at their sentencing hearings. 817 N.E.2d at 871-72. The state argued that if lack of notice amounted to error, as the court ultimately found, the proper remedy was a remand for resentencing. *Id.* at 870. The defendants contended that the proper remedy would be to have post-release control eliminated from their sentences. *Id.* Relying on *Beasley*, the court concluded that the original sentences were void, and resentencing was permissible. *Id.* at 872.

Subsequent Ohio cases involving post-release control sentencing errors fall into two broad categories: those in which the state sought to correct a sentencing error while the defendant was still in prison, *see, e.g.*, *Simpkins*, 884 N.E.2d 568, and those in which a defendant who had completed his prison term was sanctioned for violating post-release control that was never properly imposed, *see, e.g.*, *Hernandez v. Kelly,* 844 N.E.2d 301 (Ohio 2006) (per curiam). *Simpkins* states the rule that emerged from the two lines of cases:

> [I]n cases in which a defendant is convicted of, or pleads guilty to, an offense for which postrelease control is required but not properly included in the sentence, the sentence is void, and the state is entitled to a new sentencing hearing to have postrelease control imposed on the defendant unless the defendant has completed his sentence.

884 N.E.2d at 572. Therefore, for defendants who, like Aguilar-Diaz, completed their prison terms before the sentencing court conducted a de novo resentencing, the Ohio Supreme Court has said that post-release control cannot be enforced because there was

no sentence on which to justify the parole board's imposition of control. *Singleton*, 920 N.E.2d at 964.**2**

The logic underlying these Ohio decisions appears to assume that while the sentence may be void, the underlying determination of guilt is not void. Otherwise it would make no sense for there to be a resentencing in cases like *Simpkins*. Similarly, in cases like *Hernandez*, the void nature of the sentence imposing post-release control invalidates a subsequent conviction for violating that control, but this does not by any logic require the invalidation of the original underlying conviction.

This understanding is consistent with the few Ohio lower court cases that have considered the interaction between these void sentences and other aspects of Ohio criminal law. In *State v. Patterson*, the defendant was charged with operating a motor vehicle while under the influence ("OVI"). No. 09CA0014-M, 2009 WL 5174079 (Ohio Ct. App. Dec. 31, 2009). Because Patterson had a prior felony conviction for driving under the influence of alcohol ("DUI"), his OVI charge was elevated to a third-degree felony. Patterson argued before the trial court that his prior felony DUI conviction was void for lack of post-release control notification, and therefore did not form a proper basis for elevating his OVI charge. *Id.* at *1. The trial court held a hearing on the matter, noted that the issue was interesting, and expressed a hope that it would be considered by the Court of Appeals. *See id.* at *6 (concurring opinion). Ultimately, however, the trial court determined that Patterson's prior conviction was not void and could serve as a basis for elevating the OVI charge. *Id.* at *1. The Ohio Court of Appeals disposed of the case on procedural grounds and did not address the question of whether sentences void for lack of post-release control are properly considered for assessing subsequent charges. *Id.* at *3.

---

**2**This summary applies to defendants, like Aguilar-Diaz, who were originally sentenced before July 11, 2006. On July 11, 2006, the Ohio legislature attempted to eliminate the problems arising from inadequate post-release control notices by revising its statute to allow courts to correct those deficient sentences through nunc pro tunc entries, rather than de novo resentencing hearings. Ohio Rev. Code § 2929.191. Although the state legislature attempted to make this provision retroactive, the Ohio Supreme Court held that it could only apply prospectively from the date of enactment. *Singleton*, 920 N.E.2d at 964. Because Aguilar-Diaz was sentenced for his state felony prior to July 11, 2006, it is not necessary to further explore the significance of this statute.

On the same day *Patterson* was decided, another Ohio appellate court issued an opinion addressing whether a defendant whose sentence had been voided for lack of post-release control notification was still subject to the fine and court costs imposed after his conviction. *State v. Biondo*, No. 2009-P-0009, 2009 WL 5176657 (Ohio Ct. App. Dec. 31, 2009) (appeal not accepted for review by Supreme Court of Ohio). The Court of Appeals rejected as absurd the possibility that the voiding of the original sentence meant Biondo would "have no record of conviction for the crime to which he admitted guilt in 2001." *Id.* at *8. Instead, the court found that the prison term Biondo had served could be seen "as a sentence unto itself," and held that "all sanctions properly imposed will survive a successful notification challenge." *Id.*

In the instant case it is not necessary for us to determine whether Aguilar-Diaz's forgery conviction is void in Ohio or, if it is, whether it would still be valid for federal sentencing purposes. This is because the federal sentencing proceeding is not the proper forum to challenge that conviction. In *Custis*, the Supreme Court held that a defendant could not collaterally attack a state court conviction used for purposes of enhancement under the Armed Career Criminal Act unless the challenge was based on a violation of the right to counsel. 511 U.S. at 496. Although the holding relates to enhancement under the Armed Career Criminal Act, there is language in the opinion to support the somewhat broader proposition that a defendant cannot attack a state conviction used for any purpose in federal sentencing proceedings unless he identifies a statute providing for collateral attack or claims a denial of the right to counsel. *Id.* at 492 (recognizing that Congress specifically authorized certain collateral attacks in 21 U.S.C. § 851(c)); *id.* at 496 ("Custis invites us to extend the right to attack collaterally prior convictions used for sentence enhancement beyond the right to have appointed counsel . . . .We decline to do so."). This court has recognized that *Custis* applies not just to enhancements under the Armed Career Criminal Act, but also to enhancements under the sentencing guidelines. *United States v. Bonds*, 48 F.3d 184, 186 (6th Cir. 1995).

Aguilar-Diaz argues that *Custis* does not limit collateral attacks at sentencing to those based in statute or on the denial of the right to counsel. He reads *Custis* to stand

for the principle that "sentencing courts may not employ sentencing enhancements based on vacated or void state convictions." The basis of this argument is the language from *Custis* noting that "[n]one of [Custis's] alleged constitutional violations rises to the level of a jurisdictional defect resulting from the failure to appoint counsel at all." 511 U.S. at 496. Aguilar-Diaz argues that this language permits any challenge based on a jurisdictional defect. He then argues that the Ohio sentencing court lacked subject-matter jurisdiction in his case, citing a state court decision that defines a void sentence as "one that a court imposes despite lacking subject-matter jurisdiction or the authority to act," *State v. Payne*, 873 N.E.2d 306, 311 (Ohio 2007). However, Aguilar-Diaz does not explain why his sentence is void for lack of subject-matter jurisdiction rather than the sentencing court's lack of authority to impose a sentence that fails to comply with statutory requirements. His contention that the trial court lacked subject-matter jurisdiction over a criminal sentencing is unsupported and implausible.

Regardless of the merits of his jurisdiction argument, Aguilar-Diaz misreads *Custis* and this court's precedent by stating that *Custis* permits non-statutory collateral attacks beyond right-to-counsel claims. This court has interpreted *Custis* as recognizing right-to-counsel violations as the sole non-statutory grounds on which a collateral attack may be entertained at sentencing. In *United States v. Lalonde*, 509 F.3d 750, 767-68 (6th Cir. 2007), we held that a defendant's claim that a prior Kentucky conviction was invalid and therefore should not be used for sentencing purposes was precluded by *Custis*. The court emphasized that "a defendant in a sentencing proceeding may not collaterally challenge the use of prior convictions or parole revocations for purposes of criminal history calculation unless the challenge is based upon an alleged violation of the right to counsel." *Id.* at 767. The court noted that Kentucky law did appear to support Lalonde's contention that his state felony conviction was invalid. However, since his conviction had not been declared invalid by any Kentucky court, it was properly considered for sentencing guidelines purposes. *Id.* at 768. Lalonde's sentencing claim is quite similar to the claim in this case. Under our precedent, therefore, Aguilar-Diaz's claim is precluded as a collateral attack on a state conviction.

If Aguilar-Diaz believes he has a valid claim that his state conviction is truly void in its entirety, he could pursue that claim through state channels for seeking post-conviction relief.[3] *Custis*, 511 U.S. at 497. If successful, he could then petition the district court to review his sentence in light of the state court judgment. If, as Aguilar-Diaz argues, state post-conviction relief is not now available to him because it is as if his sentence never existed, it appears he is simply foreclosed from attacking his conviction. *See Daniels v. United States*, 532 U.S. 374, 383-84 (2001).

Aguilar-Diaz notes that the Supreme Court acknowledged in *Daniels* that "there may be rare cases in which no channel of review was actually available to a defendant with respect to a prior conviction, due to no fault of his own." *Daniels,* 532 U.S. at 383. Presumably, he is asking this court to conclude that some collateral forum must be made available under those circumstances. However, *Daniels* did not hold that such cases offered grounds for collaterally attacking a state conviction during federal sentencing proceedings. *Daniels*, 532 U.S. at 383-84. The Court found it unnecessary to resolve the question, because channels of appeal had been available to Daniels at one time. *Id.* Here too, it is not that Aguilar-Diaz never had the opportunity to challenge his prior sentence, but rather that he had no reason to. Had he raised such a challenge while in prison, the Ohio courts would simply have applied judicially established corrective mechanisms to impose post-release control. *See State ex rel. Cruzado v. Zaleski*, 856 N.E.2d 263, 268 (Ohio 2006). Therefore, while it would have been unwise for Aguilar-Diaz to raise the claim at that time, it would not have been impossible. Were he, upon release, improperly made subject to post-release control (and it is not clear that he was), he would have been able to challenge the restrictions of his post-release control during that period. The fact that Aguilar-Diaz did not raise these challenges at those times does not mean he should now be able to do so in the district court. Whether or not state-based relief is currently available to Aguilar-Diaz, he is precluded from attacking his state felony conviction in the federal sentencing proceeding.

---

[3] For Aguilar-Diaz, state post-conviction proceedings are now essentially a hypothetical avenue of relief because he is so close to completing his federal sentence. However, the fact of his relatively short sentence does not change the analysis.

Because Aguilar-Diaz's claim that his Ohio felony conviction was improperly used in calculating his applicable guidelines range is a prohibited collateral attack on a state conviction, the sentence imposed by the district court is affirmed.

---------------------------

**CONCURRENCE**

---------------------------

ALICE M. BATCHELDER, Chief Judge, concurring.  I join the majority opinion in full, and I write separately only to highlight an ambiguity in Ohio case law, without which this case would be much simpler.  The Ohio Supreme Court makes clear that a sentence imposed without post-release control is void; that court has failed to clarify, however, exactly which portion of the sentence is void, or why the court even uses the term "void" at all.  It appears to me, after reviewing the Ohio Supreme Court's cases on the subject, that the trial court's failure to follow Ohio's requirements for imposing post-release control renders only the post-release control element void; it does not eliminate the finding of guilt or the prison term sentence.  *See Ohio v. Biondo*, 2009 WL 5176657, at *8 (Ohio Ct. App. Dec. 31, 2009) ("[N]otwithstanding the court's regular conclusion that improper post-release control notification functions to void the sentence, it appears that a prison term can be seen . . . as a sentence unto itself. . . . The sentence (and, perhaps, more importantly, the conviction) survives. . . .").  It would be helpful if the Ohio Supreme Court would say as much explicitly.