NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0755n.06

No. 09-4556

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Nov 09, 2011

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOEL MCWHORTER,

      Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

_____/

Before:      MARTIN and GRIFFIN, Circuit Judges; ANDERSON, District Judge.[*]

BOYCE F. MARTIN, JR., Circuit Judge. As part of a drug deal, defendant-appellant Joel McWhorter got the short end of the stick when he exchanged a quantity of marijuana for $2,500.00, which, unbeknownst to him, was in the form of counterfeit, one-hundred-dollar bills. McWhorter planned to sell the phony bills for an amount less than face value and lined up a purchaser who just happened to be cooperating as an informant with police.

McWhorter and the informant agreed to exchange the real and fake bills at Cedar Hill Estates, a housing project in Cleveland, Ohio. When McWhorter arrived, he noticed undercover police and fled afoot through one of the Cedar Hills buildings. Police eventually apprehended him after he ran

_____

[*] The Honorable S. Thomas Anderson, United States District Judge for the Western District of Tennessee, sitting by designation.

through the building and jumped out of a second-story window, but they found the counterfeit bills along with a .380 caliber pistol under a doormat in the indoor hallway.

McWhorter admitted that he possessed the bills and gun, and pleaded guilty to possession of counterfeit obligations, in violation of 18 U.S.C. § 472, and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court accepted McWhorter's guilty plea and sentenced him to eight years of imprisonment. He does not challenge his conviction here. Rather, he attacks his sentence, claiming that the district court erred in: (1) applying section 2K2.1(b)(6) of the United States Sentencing Guidelines; and (2) wrongly calculating his criminal history category.

McWhorter's first claim on appeal is that the district court improperly applied the sentencing enhancement for possessing a firearm in connection with another felony, U.S.S.G. § 2K2.1(b)(6). He objected to this enhancement when it was listed on the pre-plea sentencing report. Because McWhorter raised this issue to the district court, "we review the district court's factual findings for clear error, and accord 'due deference' to the district court's determination that the firearm was used or possessed 'in connection with' the other felony." *United States v. Taylor*, No. 09-1961, --- F.3d ----, 2011 WL 2184325, at *11 (6th Cir. June 7, 2011).

While McWhorter admits to carrying the gun, he asserts that he began carrying it only for personal protection in a rough neighborhood after his brother was shot in a drive-by. According to him, it was only a coincidence that he happened to be carrying the gun at the time of the attempted sale of counterfeit bills, and he did not carry it "in connection with" the attempted sale. This distinction, he argues, prevents application of section 2K2.1(b)(6).

Section 2K2.1(b)(6) applies "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6). A firearm is possessed "in connection with another felony offense" if it "facilitated, or had the potential of facilitating, another felony offense or another offense." *Id.* cmt. n.14. The United States must establish a nexus that is more than coincidental between the firearm and the other felony. *United States v. Huffman*, 461 F.3d 777, 788 (6th Cir. 2006).

We have not before considered this situation: a challenge to the application of section 2K2.1(b)(6) when the other felony is possession of counterfeit bills under 18 U.S.C. § 472. However, we frequently see the enhancement applied when the other felony is a drug conviction, and almost as frequently, we see defendants argue that the enhancement does not apply because they possessed the firearm only coincidentally. *E.g.*, *United States v. Burns*, 498 F.3d 578, 580 (6th Cir. 2007); *Huffman*, 461 F.3d at 788. In those cases, we have adopted the "fortress theory," a rule that a nexus exists between the firearm and the other drug felony "where a defendant has used [or possessed] a firearm to protect the drugs, facilitate a drug transaction, or embolden himself while participating in felonious conduct." *Burns*, 498 F.3d at 580 (internal quotation marks and citation omitted).

The district court considered McWhorter's argument that he carried the gun for safety in a dangerous neighborhood, and seemed to accept that this might be one reason that he generally carried the gun. The court found, nevertheless, that a non-coincidental nexus existed between the gun and

the attempted sale of the counterfeit bills because the gun had the potential of facilitating the sale. This finding is not clearly erroneous. The items that McWhorter intended to sell were illegal, valuable, and, thus, worth protecting. It is apparent from the way in which McWhorter obtained the bills that people who deal with them can be deceitful and furtive, again necessitating protection. Because he needed protection during the potentially dangerous attempted sale, the thrust of the fortress theory is persuasive even though we have not yet applied it to a case involving counterfeit bills. McWhorter's gun *protected* the counterfeit bills, *facilitated*—made easier— the attempted sale, and *emboldened* him to attempt the sale. *See Burns*, 498 F.3d at 580. Accordingly, there was a nexus between the firearm and the other felony that was more than merely coincidental, and the district court did not err in applying section 2K2.1(b)(6).

Additionally, although McWhorter likens his situation to that of small-time drug users for whom other courts have sometimes held that section 2K2.1(b)(6) does not apply, *see United States v. Jeffries*, 587 F.3d 690, 694-95 (5th Cir. 2009); *United States v. Blankenship*, 552 F.3d 703, 705 (8th Cir. 2009), that scenario is not analogous. In those cases, the amounts of drugs found were small, only big enough for personal use. The cases make a distinction between using drugs and trafficking drugs, the latter of which often involves guns. A defendant who is using illegal drugs and just happens to be carrying a gun is not possessing the gun to facilitate the felonious possession of his drugs, as those cases explain. But McWhorter did not have a personal-use amount of counterfeit bills. He was not looking to trade a few fake twenties for groceries. Rather, he was carrying a gun while actively attempting to *sell* a large quantity of false bills. His comparison fails.

Secondly, McWhorter claims that the district court improperly calculated his criminal history score by considering Ohio state sentences that were void ab initio, or in other words, were technically void from the get-go. His claim is based on a recent Ohio Supreme Court decision whereby some past Ohio sentences are void because of procedural defects. Ohio has created a remedy for still-incarcerated defendants to receive a de novo sentencing, but defendants like McWhorter, who completed their sentences before they were considered void, have no recourse to pursue. For a thorough discussion explaining this situation, please see our earlier opinion in *United States v. Aguilar-Diaz*, 626 F.3d 265, 267-69 (6th Cir. 2010).

McWhorter filed his appellate brief in this case five months before we issued the opinion in *Aguilar-Diaz*, 626 F.3d at 269-71, which concerned a claim identical to McWhorter's. In that case, we held that this type of claim is a collateral attack upon a state conviction that we may not consider as part of a defendant's federal sentencing appeal. *Id.* Given the holding in that case, we are foreclosed from considering this claim.

We **AFFIRM**.