NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0261n.06

No. 22-3533

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Jun 08, 2023<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| CHRISTIAN HAYWARD, | ) |  |
| Defendant-Appellant. | ) | OPINION |

Before: KETHLEDGE, STRANCH, and MATHIS, Circuit Judges.

KETHLEDGE, Circuit Judge. Christian Hayward challenges on various grounds his conviction and sentence for conspiring to distribute about 15 pounds of methamphetamine. We reject his arguments and affirm.

I.

A.

In October 2019, Drug Enforcement Administration agents were conducting drug-interdiction operations at a Greyhound bus station in Omaha, Nebraska. As part of that sweep, plainclothes agents boarded a bus that had stopped on its way from California to Ohio. As the agents waited for the passengers to reboard following a driver change, they noticed a blue Nike duffel bag with no tags or markings sitting on a seat; the agents waited near the back of the bus to see who would claim it. When the passengers had all reembarked, no one sat next to the bag, but a man—later identified as Brady Hill—walked past the bag and sat in the row behind it. Hill asked

other passengers "if anyone had seen his Nike bag"—the one sitting inches in front of him. Hill later opened the bag and took out a cough drop, which prompted the agents to come forward and question him. An agent asked Hill if he owned the bag. Initially, Hill said no, but when asked again he nodded that he did. Hill also disclosed that he was travelling from Los Angeles to Cleveland on a one-way ticket purchased with cash.

An agent asked Hill if he would consent to a search or a dog sniff of the bag; Hill refused both. Based on Hill's actions (which the agents described as Hill "attempting to play dumb or distance himself from ownership of the bag") and his travel arrangements (a one-way ticket purchased with cash for a 50-hour trip), the agents detained him. They removed Hill and the bag from the bus, and a few minutes later a certified police dog sniffed the bag and indicated that it contained contraband.

An agent then advised Hill of his *Miranda* rights and discussed his options with him. The agent explained that they were not interested in small amounts of personal-use marijuana and, if that was all that was in the bag, Hill could consent to a search to confirm that fact and then reboard the bus. Alternatively, if Hill refused to allow a search, the agent said that they would apply for a warrant, which would take some time and would cause Hill to miss the bus. The agent reiterated that Hill did not need to consent to a search and that he "was just giving [Hill his] options." The agent then asked, "So, do you want me to do a search warrant or do you want to allow me to search the bag?" Hill said, "You're more than welcome to search the bag. I kind of think I know what you're going to find." Agents then searched the duffel bag and found 15 one-pound plastic bags concealed among Hill's clothes and toiletries; field tests showed that each bag contained methamphetamine.

At that point, Hill agreed to cooperate. He told agents that, several days before, Christian Hayward had met him in Los Angeles and that Hayward put the plastic bags in the Nike bag, which Hill was supposed to transport to Hayward in Cleveland. Hill said he had watched Hayward wipe each of the one-pound bags with alcohol as Hayward packed the drugs among Hill's things in the duffel bag, and that Hayward told Hill "not to look" in the bag. Messages on Hill's phone—which Hill voluntarily unlocked for the agents to search—corroborated this account. Hill also said that he had been a drug courier for Hayward multiple times in the past and that, typically, Hayward told Hill to meet him at the bus stop in Cleveland with the drugs. For example, one text exchange from July 2019, from another phone number that Hill said was Hayward's, showed that Hayward had paid Hill $1,500 to carry drugs on a bus from California to Cleveland. At the agents' request, Hill then texted Hayward, saying that he would arrive as scheduled in Cleveland early the following morning.

With information from the agents in Nebraska, agents in Ohio then obtained a warrant to locate Hayward's phone in Cleveland. Early the next morning, when Hill's bus was scheduled to arrive, agents tracked Hayward's phone to a street near the Cleveland Greyhound station. The agents stopped Hayward's car and detained him and another male passenger. The agents removed both men from the car and called the number that Hill had identified. A cell phone sitting in the center console of Hayward's car then started to ring. The ringing phone showed the agent's number as the incoming caller, confirming that it was the phone with which Hill had been texting in Omaha. Hayward's passenger also confirmed that the number Hill had given the agents was in fact Hayward's.

The agents then arrested Hayward, informed him of his *Miranda* rights, and asked him what he was doing driving at 2:30 a.m. in downtown Cleveland, about 10 miles away from his

home in Euclid, Ohio. Hayward initially said that he was "just driving around," but later said, "man, I'm just headed to the bus station to pick up a friend, that's it." When agents asked for the name of his friend, Hayward asked for his attorney and questioning stopped.

Several weeks later, agents obtained a search warrant for the historical cell-site location information for the two cell phone numbers of Hayward's that Hill had provided. That search showed that Hayward had made several trips to Los Angeles before the one Hill described to the agents. Records from United Airlines also placed Hayward in California when Hill said he was there packing the duffel bag with methamphetamines. Hayward was then charged with one count of conspiracy to possess with intent to distribute controlled substances under 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and § 846.

## B.

Hayward later moved to suppress the evidence obtained from the agents' search of the duffel bag, arguing that the agents in Omaha lacked reasonable suspicion sufficient to detain Hill. The district court denied the motion, finding that Hayward lacked standing to challenge the search of the bag because he did not own it. After a two-day trial, the jury convicted Hayward of conspiring to distribute and to possess with intent to distribute 500 grams or more of methamphetamine. The district court sentenced him to 292 months' imprisonment. This appeal followed.

## II.

## A.

Hayward argues that the district court erred when it denied his motion to suppress. We review the district court's factual findings for clear error and its conclusions of law de novo, and

consider the evidence in the light most likely to support the district court's decision. *See United States v. Russell*, 26 F.4th 371, 374 (6th Cir. 2022).

The district court denied Hayward's suppression motion on Fourth Amendment standing grounds (which are not jurisdictional), but we cut to the merits instead. Hayward's argument specifically is that Hill's consent to search the duffel bag was invalid, for two reasons. The first, Hayward says, is that Hill lacked authority to consent to the search. But Hill undisputedly had his own personal effects in the bag along with the drugs, which at a minimum made Hill a "joint user" of the bag. *See Frazier v. Cupp*, 394 U.S. 731, 740 (1969). Under binding Supreme Court precedent, therefore, Hill had authority to consent to the search. *See United States v. Matlock*, 415 U.S. 164, 170–71 (1974); *see also Frazier*, 394 U.S. at 740.

Hayward's second argument is that Hill's consent to the search was invalid because, he says, it was obtained as a result of Hill's seizure on the bus—which Hayward says was illegal. Illegal seizure or not, however, Supreme Court precedent forecloses this argument as well. The problem is that Hayward himself was not the person seized. And the Supreme Court has held "beyond any doubt that the interest in deterring illegal searches does not justify the exclusion of tainted evidence at the instance of a party who was not the victim of the challenged practices." *United States v. Payner*, 447 U.S. 727, 735 (1980). Hence the exclusionary rule would not apply here in any event, which means that Hayward's argument fails.

B.

Hayward next argues that the government failed to introduce evidence sufficient to support a conviction for conspiring to distribute methamphetamine. Here, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have

5

found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

To establish a drug-trafficking conspiracy under 21 U.S.C. § 846, the government must prove "that two or more individuals have agreed to violate a drug law (such as § 841(a)(1)'s ban on distributing drugs) and that the defendant knowingly and voluntarily entered into this agreement." *United States v. Wheat*, 988 F.3d 299, 306 (6th Cir. 2021). A single co-conspirator's testimony can be enough to prove a defendant's involvement in a conspiracy. *See United States v. Graham*, 622 F.3d 445, 450 (6th Cir. 2010) (collecting cases). That is true regardless of whether the testimony is corroborated. *See United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999).

Here, Hill testified that he repeatedly transported distribution-level quantities of drugs across the country for Hayward. The methamphetamine in Hill's bag when he was arrested itself had a street value of about $50,000. And a large number of text messages corroborated Hill's testimony at trial. Ample evidence therefore supported Hayward's § 846 conviction.

Hayward's arguments to the contrary are meritless. Our decision in *Wheat* is plainly distinguishable, given that Hill ferried drugs for Hayward no less than seven times. *See* 988 F.3d at 309–11. And this court will not second-guess the jury's determination that Hill's testimony was credible. *See United States v. Talley*, 164 F.3d 989, 996 (6th Cir.1999).

## C.

### 1.

Finally, Hayward challenges the district court's calculation of his guidelines range. We review the district court's legal conclusions de novo and its findings of fact for clear error. *United States v. Moon*, 513 F.3d 527, 539–40 (6th Cir. 2008).

Hayward first argues that the district court erred when it attributed to him just over six kilograms of methamphetamine. He argues, specifically, that the government tested for purity only 3 of the 15 bags that were seized from Hill. When calculating drug-quantity, "the district court can make a reasonable estimate based on physical evidence or testimony." *United States v. Gardner*, 32 F.4th 504, 524 (6th Cir. 2022) (cleaned up). Here, Hill testified that Hayward placed 15 plastic bags of drugs in his duffel bag; each of the bags field tested positive for methamphetamine, and each was nearly identical in size and appearance, weighing about a pound. Three of those bags were laboratory tested, and each of the three contained at least 0.97 pounds of drugs. Hayward stipulated to all of these facts. And Hayward did not contest that the drugs from one of the lab-tested bags was about 96 percent pure. Given this undisputed evidence, the district court did not clearly err when it estimated that Hayward was responsible for about 13.42 pounds (6.088 kilograms) of methamphetamine. *See United States v. Jackson*, 470 F.3d 299, 310–11 (6th Cir. 2006) (cleaned up).

2.

Hayward argues next that the district court erred in applying a 2-point leadership enhancement to his sentence. U.S.S.G. § 3B1.1(c). "To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1 cmt. n.2. Here, the evidence showed that Hayward told Hill where and when to pick up drugs from Hayward (either Las Vegas or Los Angeles); that Hayward dictated Hill's mode of travel; that only Hayward knew the type and quantity of drugs in each shipment; and that Hayward set the amount that Hill was paid per trip. The district court correctly applied this enhancement.

3.

Finally, Hayward argues that, in calculating his criminal history, the district court should not have included two state-court convictions that Hayward now says are "void." That argument amounts to a collateral attack on his convictions in those cases, in his direct appeal of his conviction and sentence in this case. But a "defendant cannot attack a state conviction used for any purpose in federal sentencing proceedings unless he identifies a statute providing for collateral attack or claims a denial of the right to counsel." *See United States v. Aguilar-Diaz*, 626 F.3d 265, 269 (6th Cir. 2010). Here, Hayward does neither, which means his argument fails. The district court did not err in calculating Hayward's criminal history.

\*     \*     \*

The district court's judgment is affirmed.