*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0189P (6th Cir.)
File Name: 04a0189p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

No. 02-6446

REGINALD BOXLEY,
*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 98-10045—James D. Todd, Chief District Judge.

Argued: April 27, 2004

Decided and Filed: June 22, 2004

Before: MARTIN and ROGERS, Circuit Judges; BELL,
Chief District Judge.[*]

———————

### COUNSEL

**ARGUED:** David W. Camp, PETTIGREW & CAMP, Jackson, Tennessee, for Appellant. Christopher E. Cotten,

———————

[*] The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** David W. Camp, PETTIGREW & CAMP, Jackson, Tennessee, for Appellant. Christopher E. Cotten, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

———————

### OPINION

———————

BOYCE F. MARTIN, JR., Circuit Judge. Reginald Boxley appeals his conviction of possession of sixty grams of crack cocaine with the intent to distribute under 21 U.S.C. § 841(a)(1). Based on the reasoning of the district court, we affirm the judgment. We write only to elaborate on two issues: (1) the qualification of testimony regarding canine searches, and (2) the operation of the presumption under the doctrine of spoliation.

### I. Testimony on Canine Searches: Qualifications

On the night he was arrested in December of 1997, Boxley was subjected to a canine search for drugs by a drug-detection dog, Cuffs. Though Cuffs alerted to Boxley's pant pocket, the police found no drugs in the pocket or on Boxley's body. The police did, however, find drugs nearby and, based in part on Cuffs's alert, arrested Boxley. At Boxley's trial for possession of cocaine, the prosecution submitted testimonial evidence by Officer Anderson, Cuffs's handler, that drug dogs alert to aromas of drugs, not drugs themselves, and that Cuffs's alert to Boxley's pocket demonstrates that Boxley carried an aroma of drugs. This testimony was intended to link Boxley to the drugs that were found in his vicinity that night.

On cross-examination, Boxley asked Officer Anderson whether he had any documentation, such as "search find sheets," to verify the dog's prior history and accuracy.

Anderson stated that the department did not keep accuracy records for drug dogs, but that Cuffs was certified as a drug dog after a two-month training program. Anderson also explained that Cuffs's record on the department's computer database was deleted after Cuffs passed away, more than two years before Boxley's trial. When asked whether Cuffs had alerted in the past to a finding of no drugs, as he did in this case, Anderson acknowledged that Cuffs had done so one other time in his prior sixty to seventy searches. Anderson also stated that no dog can be "one hundred percent accurate." On appeal, Boxley claimed that the district court abused its discretion in allowing Anderson's testimony because Cuffs's qualifications could not be documented or verified.

We recognize that an alert in the context of a canine narcotics sniff indicates that narcotics are present in the item being sniffed or have been present in such a way as to leave a detectable odor. *United States v. Buchanon*, 72 F.3d 1219, 1217 n.1 (6th Cir. 1995). Thus, we now consider whether the testimony regarding the alert in this case is reliable. This Court considered the reliability of testimony as to canine searches in *United States v. Diaz*, 25 F.3d 392 (6th Cir. 1994), for purposes of determining whether a canine's alert could satisfy probable cause for a warrantless search of a car in a public parking lot. For guidance in determining whether such testimony was admissible without documentation verifying the dog's reliability, we applied general principles of evidence law.

We held that in order to admit evidence of a dog's alert to an aroma of drugs, it is not necessary to provide the dog's training and performance records, as it is similarly unnecessary to qualify a human expert in this way. Rather, testimony as to the dog's record is sufficient. *Id.* at 396. We stated: "[w]hile training and performance documentation would be useful in evaluating a dog's reliability, here the testimony of [the dog's handler] sufficiently established the dog's reliability." *Id.*

We also determined that it is not necessary for the government to show that the dog is accurate one hundred percent of the time, because "a very low percentage of false positives is not necessarily fatal to a finding that a drug detection dog is properly trained and certified." *Id.* In *Diaz*, we concluded:

> When the evidence presented, whether testimony from the dog's trainer or records of the dog's training, establishes that the dog is generally certified as a drug detection dog, any other evidence, including the testimony of other experts, that may detract from the reliability of the dog's performance properly goes to the credibility of the dog. Lack of additional evidence, such as documentation of the exact course of training, similarly would affect the dog's reliability. As with the admissibility of evidence, generally, the admissibility of evidence regarding a dog's training and reliability is committed to the trial court's sound discretion.

*Id.* at 394. Thus, after it is shown that the dog is certified, all other evidence relating to his accuracy goes only to the credibility of the testimony, not to the dog's qualifications. *See United States v. Sanchez-Pena*, 336 F.3d 431 (5th Cir. 2003) (evidence that the dog was certified was sufficient proof of his training to make an effective alert); *United States v. Daniel*, 982 F.2d 146, 152 n.7 (5th Cir. 1993) (noting that there is no requirement of an affidavit demonstrating the reliability of a drug-detecting dog); *United States v. Wood*, 915 F.Supp. 1126, 1136 n.2 (D.Kan.1996), *rev'd on other grounds*, 106 F.3d 942 (10th Cir. 1997) ("[w]ith a canine, the reliability should come from the fact that the dog is trained and annually certified to perform a physical skill. When the annual certification process involves actual field testing and grading of the canine's drug-detection skills . . . the canine's reliability is sufficient for a probable cause determination absent some circumstance that justifies a more complete examination of the canine's skill and performance."). In this case, Officer Anderson testified that Cuffs was certified as a

drug detection dog after a two-month training program. Because Cuffs was certified, the district court properly admitted Anderson's testimony.

## II.  Instruction on Spoliation of Evidence

At trial, Boxley requested the following jury instruction:

The government in this case has failed to take efforts toward preservation of certain fingerprint evidence. The failure to preserve this evidence creates a rebuttable presumption that the missing evidence may have been favorable to the defendant. This presumption could be sufficient to create a question of reasonable doubt on the issue of whether Reginald Boxley ever possessed the cocaine base charged in his indictment.

In arguing for a presumption based on the government's "failure to preserve" evidence, Boxley claims spoliation. Spoliation is defined as the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction. *See Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 804 (6th Cir. 1999).

The doctrine traditionally operates against the defendant in a criminal prosecution. For example, the prosecution usually requests a jury instruction on spoliation when there is evidence that the defendant intentionally destroyed evidence again him. Here, Boxley argued, unconventionally, for the use of a spoliation instruction against the police, so that the jury would exercise an unfavorable presumption against the prosecution. Boxley argued that in order to hold the government to its burden of proving guilt beyond a reasonable doubt, he should have every access to presumptions in his favor.

The facts of this case do not warrant exercising the presumption. At trial, the government demonstrated that there was very little chance that even the most diligent

preservation would have yielded fingerprint evidence. The government also demonstrated that the police did not act with any intention to destroy evidence. In *Nationwide*, 174 F.3d at 804, this Court defined "intentional destruction" not as a knowing and willful removal of evidence, but as removal with the "purpose of rendering it inaccessible or useless to the defendant in preparing its case; that is, spoiling it." In this case, testimony adduced at trial indicated that several police officers handled the bag that contained the drugs. However, as the government contends, there is nothing to indicate that the officers did so in bad faith. Rather, the proof at trial indicated that the bag was passed around "because it was the largest amount of crack any of them had ever seen."

We agree with the district court: "the most that has been shown is that the policemen did not maintain and control the evidence in a manner consistent with good police tactics. But there was no bad faith involved." Because the fingerprints were not likely to be lifted from the evidence notwithstanding the officers' actions, and because their actions were not in bad faith, the motion for a jury instruction on spoliation was properly denied.

## III

For the foregoing reasons, we AFFIRM the judgment of the district court.