**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1307n.06

**No. 11-6221**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Dec 21, 2012***

DEBORAH S. HUNT, Clerk

ARCH INSURANCE COMPANY,
MONTGOMERY COUNTY FIRE
PROTECTION DISTRICT NO. 1, &
MONTGOMERY COUNTY FIRE &
PROTECTION PROPERTIES, INC.,

      **Plaintiffs-Appellees,**

v.

**BROAN-NUTONE, LLC,**

      **Defendant-Appellant.**

                            /

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY**

BEFORE:    BOGGS and CLAY, Circuit Judges; STAFFORD, District Judge.[*]

    **CLAY, Circuit Judge.**  Defendant Broan-NuTone, LLC appeals multiple orders of the district court following a jury verdict in favor of Plaintiffs Arch Insurance Company and Montgomery County Fire Protection District 1 (collectively "Plaintiffs") in their diversity action under the Kentucky products liability statute, Ky. Rev. Stat. §§ 411.300 *et seq*. Defendant appeals the jury verdict and judgment and the district court's denial of its motions for judgment as a matter of law. For the reasons set forth below, we **AFFIRM** the district court's judgment and orders.

---

[*]The Honorable William H. Stafford, Senior United States District Judge for the Northern District of Florida, sitting by designation.

# BACKGROUND

## I.       Procedural History

This case arises out of a fire that occurred at Montgomery County Fire Station 1 in Mt. Sterling, Kentucky, on September 17, 2007. Plaintiff Montgomery County Fire Protection District 1 was compensated for the resulting property damage by its insurance carrier, Plaintiff Arch Insurance Company. After an investigation, Arch Insurance determined that the cause of the fire was a defective fan/light assembly manufactured by Defendant Broan NuTone, LLC.

On September 16, 2009, Plaintiffs filed a subrogation action in Montgomery County Circuit Court against Defendant to recover the cost of the insurance claim. On September 29, 2009, the case was removed to the United States District Court for the Eastern District of Kentucky, pursuant to that court's diversity jurisdiction under 28 U.S.C. § 1332. Prior to trial, Plaintiffs negligently allowed key evidence to be destroyed, and Defendant moved the district court to consider sanctions for the spoliation of evidence. On August 31, 2011, the district court ordered that the jury be given a permissive adverse inference instruction at trial.[1]

---

[1] The jury was ultimately instructed as follows:

The jury is instructed that Plaintiffs negligently failed to preserve the fan/light device in the northern stall which they contend caused the fire, and negligently failed to preserve the fan/light device in the southern stall, and associated wiring, and circuit panels. You have heard evidence that SEM/EDS (Scanning Electron Microsocpe/Energy Dispersive Spectroscopy) testing of the fan/light would have confirmed or refuted Plaintiff's theory of causation. Because Plaintiffs did not preserve the evidence, the jury may infer that this further testing would have disproved Plaintiffs' causation theories.

A jury trial was held in the matter from September 12–16, 2011. At the close of Plaintiffs' case and at the conclusion of all evidence, Defendant orally moved the district court to grant judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) on the issues of liability and damages. The district court denied the motions.

On September 16, 2011, the jury found that the fan/light assembly manufactured by Defendant departed from its intended design, and that the manufacturing defect was a substantial factor in causing Plaintiffs' injury. The jury returned a damages award in Plaintiffs' favor of $463,010.35 for injury to real property, $4,239.60 for loss of personal property, and $9,574.61 for loss of clothes and household goods. The district court entered judgment consistent with the jury's verdict on September 20, 2011. Defendant filed a timely notice of appeal on October 7, 2011, invoking this Court's jurisdiction under 28 U.S.C. § 1291.

## II.    Facts

Montgomery County Fire Protection District 1 operated the fire department out of a property that it leased from the City of Mt. Sterling, Kentucky. The property caught fire on September 17, 2007, and was significantly damaged. Under the terms of its lease, Montgomery County Fire was obligated to indemnify the City of Mt. Sterling for any damage to the building. In December 2007, Montgomery County Fire's insurance carrier, Arch Insurance Company, paid approximately $463,000 to the City of Mt. Sterling for the damage to the building caused by the fire.

On October 17, 2007, one month after the fire, Plaintiffs' insurance adjuster wrote to Defendant stating, "The fire is believed to have started in the model QRE 090 FL-B Exhaust Fan with light." (R. 92-1, Aff. of Elliot Duncan, Ex. 1.) The fan/light assembly in question had been

installed in the ceiling of a bathroom stall inside the fire station. On November 1, 2007, a formal site inspection was conducted. At this inspection, evidence was collected, including the fan/light assembly that was the target of the investigation. Both parties' experts participated in the inspection and removal of the fan/light assembly and associated wiring from the scene. The evidence was taken into custody by Donan Engineering, which had been retained by the City of Mt. Sterling to investigate the fire, and was kept at their offices in Louisville, Kentucky.

After a second inspection of the physical evidence attended by representatives of both parties, Plaintiffs' insurance adjuster sent another letter to Defendant on March 6, 2008, stating that "as a result of our investigation, it has been determined that the cause and origin of the fire was in a ceiling fan and light combination manufactured by Broan NuTone." (R. 92-1, Aff. of Elliot Duncan, Ex. 2.) In April 2008, Donan Engineering sent an invoice for evidence storage to Collins & Company, a third-party administrator representing the City of Mt. Sterling. Apparently wanting to avoid further storage fees, Collins & Company authorized Donan to discard the evidence without first consulting either Plaintiffs or Defendant.

At trial, Plaintiffs' expert William Mers Kelly testified that the fire was caused when wires inside the fan/light assembly came into contact with the sharp edge of a metal support bracket. This contact caused "notching," which eventually compromised the insulation around the wires and exposed the copper underneath. A similar fan/light assembly that did not catch fire was removed from another stall in the bathroom and exhibited similar "notching." The compromised insulation led to localized heating which eventually ignited surrounding combustible materials and started the fire.

4

Defendant's expert Richard Kovarsky testified that a certain type of scientific test—Scanning Electron Microscope/Energy Dispersive Spectroscopy ("SEM/EDS")—would absolutely confirm or refute Plaintiffs' theory of causation. This test would show whether traces of the copper wire could be found on the metal bracket and vice versa, thus confirming or refuting Plaintiffs' theory that the insulation around the wires was compromised by the sharp edge of the bracket. However, the test was not conducted before the evidence was destroyed.

## DISCUSSION

### I.      Spoliation Instruction

We review for an abuse of discretion the district court's decision to impose sanctions for evidence spoliation, "[g]iving great deference to the district court's credibility determinations and findings of fact." *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 554 (6th Cir. 2010). District courts have "broad discretion in crafting a proper sanction for spoliation." *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (en banc). "A court abuses its discretion when it commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *Jones v. Ill. Cent. R.R. Co.*, 617 F.3d 843, 850 (6th Cir. 2010) (internal quotation marks and citation omitted).

Defendant argues that it was irreparably prejudiced by the loss of the evidence, and that we should either reverse the judgment and dismiss Plaintiffs' complaint or grant a new trial in which the jurors are instructed that they must presume that the evidence was adverse to Plaintiffs. For their part, Plaintiffs do not dispute that *some* spoliation sanction was proper, but they argue that the district court's adverse inference instruction was too severe. "[A] proper spoliation sanction should

5

serve both fairness and punitive functions." *Adkins*, 554 F.3d at 652. The district court properly considered both the fairness and punitive functions of possible spoliation sanctions, as well as the alternatives requested by Defendant, and concluded that an adverse inference instruction was appropriate.

## A. Fairness

The district court considered relevant facts and chose a sanction that was fair to both parties. Defendant argues that its experts never had the opportunity to examine the fan/light assembly until after it was notified of Plaintiffs' theory of causation. Had they been able to conduct SEM/EDS testing, Defendant argues, Plaintiffs' theory of causation would have been positively confirmed or refuted. Undoubtedly Defendant was prejudiced by its inability to conduct these tests, as the district court readily acknowledged. But Defendant did not lose the opportunity to present a defense to Plaintiffs' claim, nor was it totally blindsided by Plaintiffs' causation theory.

On the contrary, Defendant had notice of the general nature of Plaintiff's theory, as well as several opportunities to inspect the fan/light assembly before it was destroyed. Plaintiffs' insurance adjuster sent two letters to Defendant before the evidence was destroyed, each stating specifically that the fire was determined to have been caused by the fan/light assembly manufactured by Defendant. Defendant's expert, Richard Kovarsky, was present for a formal site inspection on November 1, 2007, as well as an additional inspection of the physical evidence on November 29,

6

2007. The fan/light assembly was destroyed in April 2008, but Defendant did not express a desire to conduct further tests until March 2009, nearly one year later.[2]

Nevertheless, the destruction of the evidence was prejudicial. Defendant was unable to definitively refute Plaintiff's causation theory. Defendant could and did present its own expert testimony, however, which put before the jury alternative causation theories. Additionally, Defendant was able to argue to the jury that Plaintiffs had negligently allowed the fan/light assembly to be destroyed, and the jury was instructed that they could infer that further testing would have disproved Plaintiffs' causation theory.

Based on these facts, the district court's selection of a permissive adverse-inference instruction was appropriate. Under certain extreme circumstances, as when spoliation denies a defendant access to "the only evidence from which it could develop its defenses adequately," dismissal of an action may be a proper sanction. *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 593–94 (4th Cir. 2001). However, dismissal is a "particularly severe sanction," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991), and is "usually justified only in circumstances of bad faith or other like action." *Silvestri*, 271 F.3d at 593. No allegations of bad faith have been leveled against Plaintiffs in this case, and Defendant was not denied the ability to develop its defenses adequately.

---

[2] At oral argument, Plaintiffs claimed that Kovarsky had testified that he had an idea of what Plaintiffs' causation theory would be. At trial, Kovarsky testified that Plaintiffs were "looking at that fixture [the fan/light assembly] and those wires with interest . . . . In terms of the specific mechanism that they were considering, no, I did not know the specifics . . . ." (R. 132, Trial Tr. 78.) This testimony confirms that Defendant was aware that the fan/light assembly was the target of the investigation, if not the exact details of Plaintiffs' causation theory.

**B.     Punishment**

The district court concluded that Plaintiffs were negligent in allowing the fan/light assembly to be destroyed, and they have not challenged that conclusion in this Court.  The sanction of a permissive adverse-inference instruction is adequate punishment for Plaintiffs' negligent conduct. A spoliation sanction's "severity should correspond to the district court's finding after a fact-intensive inquiry into a party's degree of fault under the circumstances, including the recognition that a party's degree of fault may range from innocence through the degrees of negligence to intentionality." *Beaven*, 622 F.3d at 554  (internal quotation marks and citation omitted).

Plaintiffs knew or should have known that the City of Mount Sterling, which leased the firehouse to Montgomery County Fire, had engaged Donan Engineering through its agent, Collins & Company, a third-party administrator.  The City never pursued a claim against Defendant because it was fully indemnified against loss by its lease agreement with Montgomery County Fire. Therefore, it had no reason to continue paying for the storage of the fan/light assembly at Donan Engineering's facility.  Given these circumstances and the fan/light assembly's critical relevance to its potential claim against Defendant, Plaintiffs should have taken steps to ensure that the evidence was preserved.

Although Plaintiffs' negligence caused the evidence to be destroyed, the district court's finding that they did not knowingly or purposefully cause the destruction is supported by the record and is not clearly erroneous.  Plaintiffs did not learn of the destruction until November 2008, some seven months after Donan Engineering had discarded the fan/light assembly.  They did not destroy the evidence to conceal any facts, nor did they do so in an attempt to prevent Defendant from

discovering relevant facts. The district court tailored the severity of its sanction to correspond to Plaintiffs' degree of fault. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002) ("[The] sanction [of an adverse inference] should be available even for the negligent destruction of documents if that is necessary to further the remedial purpose of the inference.") (internal quotation and citation omitted).

## C. Alternative Instructions

The district court considered and rejected alternative spoliation sanctions requested by Defendant, among which were a mandatory adverse-inference instruction, a presumption instruction, and outright dismissal of the action. Instead of these, the district court gave a permissive adverse-inference instruction, telling the jurors that they "may infer" that further tests would have refuted Plaintiffs' causation theory.

In the context of spoliation sanctions, adverse-inference instructions are typically permissive, in that they allow, but do not require, the factfinder to infer a given fact. *See Beaven*, 622 F.3d at 555 ("[A]n adverse inference is usually only permissive for the factfinder, not mandatory . . . ."); *Dae Kon Kwon v. Costco Wholesale Corp.*, 469 F. App'x 579, 580 (9th Cir. 2012) ("A fact finder may draw an inference against any party that destroys or despoils evidence, but that inference is permissive rather than mandatory."). A permissive instruction is particularly appropriate if the evidence was not intentionally destroyed. *See Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1159 (1st Cir. 1996) ("[T]he adverse inference is permissive, not mandatory. If, for example, the factfinder believes that the [evidence was] destroyed accidentally or for an innocent reason, then the factfinder is free to reject the inference.").

9

Defendant argues that the permissive instruction gave it "nothing it did not already possess" because the jury is always free to infer facts. Defendant cites to *West v. Tyson Foods, Inc.*, 374 F. App'x 624 (6th Cir. 2010), which described a permissive adverse-inference instruction as "simply a formalization of what the jurors would be entitled to do even in the absence of a specific instruction." *Id.* at 635. This description properly emphasizes that the jury's *discretion* to draw inferences warranted by the evidence remains the same with or without a permissive instruction. This Court did not state in *Tyson Foods* that a permissive instruction has no effect at all. On the contrary, the instruction came dressed in the authority of the court, giving it more weight than if merely argued by counsel. *See Boyde v. California*, 494 U.S. 370, 384 (1990) (noting that "arguments of counsel . . . are usually billed in advance to the jury as matters of argument, not evidence" but instructions from the court "are viewed as definitive and binding statements of the law"). In choosing a permissive adverse inference instruction, the district court properly balanced the interests of the parties and punished Plaintiffs' culpable behavior. Therefore, the district court's choice of sanction was not an abuse of discretion.

## II.     Measure of Damages for Injury to Real Property

We review the "legal accuracy of jury instructions de novo," *United States v. Blanchard*, 618 F.3d 562, 571 (6th Cir. 2010), and the denial of a proposed jury instruction for an abuse of discretion. *King v. Ford Motor Co.*, 209 F.3d 886, 897 (6th Cir. 2000). The district court has broad discretion in framing jury instructions. *Id.* We review the jury instructions as a whole to decide whether they adequately informed the jury of the relevant considerations and provided a basis in law to assist the jury in reaching its decision. *Id.* We will reverse "only if the instructions, viewed as

a whole, were confusing, misleading, or prejudicial." *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 72–73 (6th Cir. 1990).

In a diversity action, state law determines the substance of the jury instructions, but federal law governs the standard of review and any questions concerning the propriety of the instructions. *King*, 209 F.3d at 897. "In interpreting state law, we apply the law of the state's highest court, and when the state's highest court has not ruled on an issue, we must ascertain the state law from all relevant data, including the state's intermediate court decisions." *Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 544 (6th Cir. 2012) (internal quotation marks omitted). "Kentucky follows the 'bare-bones' principle in providing jury instructions." *McGuire v. Commonwealth*, 885 S.W.2d 931, 936 (Ky. 1994). The instructions "should not contain an abundance of detail, but should provide only the bare bones of the question for jury determination. This skeleton may then be fleshed out by counsel on closing argument." *Ball v. E.W. Scripps Co.*, 801 S.W.2d 684, 691 (Ky. 1990) (internal quotation and citation omitted).

Defendant argues that it was prejudiced by the district court's damages instruction.[3] Defendant contends that Kentucky law requires plaintiffs to present, as part of a *prima facie* case, evidence of both the cost of restoration and the diminution in fair market value of the damaged property. However, Kentucky specifically does *not* require a plaintiff in an injury-to-property case to present both types of evidence as part of a *prima facie* case. "[A] plaintiff seeking restoration cost

---

[3] The jury was instructed as follows:

If you find for Plaintiffs you will determine from the evidence and award a sum of money in an amount equal to the reasonable cost of restoring the building to substantially the same condition as immediately before it was damaged by the fire.

damages in an injury-to-property case need not introduce evidence of a diminution in the fair market value of the property in order to state a prima facie case and overcome a motion for directed verdict because reasonable inferences may be drawn from evidence of restoration costs . . . ." *Ellison v. R & B Contracting, Inc.*, 32 S.W.3d 66, 74 (Ky. 2000); *see also Mountain Water Dist. v. Smith*, 314 S.W.3d 312, 315 (Ky. Ct. App. 2010) (finding "no Kentucky authority which states the burden of proving damages in an injury-to-property case requires the claimant to demonstrate both cost of repair damages and diminution in value damages").

In *Ellison*, the Kentucky Supreme Court described at length the procedure for measuring damages in injury-to-property cases. Defendant relies heavily on *Ellison*'s directive that "trial courts shall require the jury to find whether the injury may be repaired at a cost less than the diminution in the value of the property, and, if the jury finds otherwise, limit the claimant's recovery to the diminution in the value of the property." *Ellison*, 32 S.W.3d at 70. But Defendant ignores *Ellison*'s factual context as well as its statement that plaintiffs need not present evidence of both types of damages as part of a *prima facie* case. *Ellison* dealt with an injury to property where the cost to repair damage was substantially higher than the diminution in fair market value of the property. *Id.* at 69. Crucially, evidence of both amounts was presented at trial. *Id. Ellison* stands for the principle that when evidence of both restoration cost and fair market value has been presented to the jury, the jury must be instructed to award the lesser of the two amounts. *See id.* at 70–71; *see also Mountain Water Dist.*, 314 S.W.3d at 315 ("The effect of *Ellison* is to prevent a claimant from seeking cost of repair damages that exceed the diminution in fair market value."). Jury instructions flow from the

evidence presented, not the other way around. Defendant could have, but did not, present any evidence of fair market value.

Without evidence of fair market value, the district court instructed the jury to measure damages by referencing the reasonable cost of restoring the building to its pre-fire condition. "In the absence of evidence to the contrary, it may be presumed that the anticipated cost of repair would reduce the value by an equal amount." *Newsome v. Billips*, 671 S.W.2d 252, 255 (Ky. Ct. App. 1984), *cited with approval in Ellison*, 32 S.W.3d at 74. Therefore, the district court's instruction complied with *Ellison*'s requirement that the jury find the lesser of the two amounts. Because the district court properly characterized Kentucky law, its instruction to the jury on the issue of damages was proper.[4]

## III.     Rule 50 Motions

The denial of a motion for judgment as a matter of law is reviewed *de novo. Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 723 (6th Cir. 2012). In diversity cases, where a Rule 50 motion is based on a challenge to the sufficiency of the evidence, "a state-law standard of review applies." *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 313 (6th Cir. 2011). In Kentucky, the standard of review governing a motion for judgment as a matter of law is as follows:

---

[4] This Court's decision in *Lichtefeld v. Mactec Eng'g & Consulting, Inc.*, 239 F. App'x 97 (6th Cir. 2007), is not to the contrary. In that case, this Court reversed the district court for instructing a jury in an injury-to-property case that it could find damages in the amount of *either* diminution in value or cost of repair when presented with evidence of both. *Id.* at 104. That instruction clearly violates *Ellison*'s requirement that the jury choose the lesser of the two amounts. *See id.* at 103–04. In the instant case, on the contrary, no evidence of fair market value was presented, and the district court could hardly have been expected to instruct the jury on evidence that did not need to be, and in fact was not, presented.

> [A] motion for . . . judgment as a matter of law . . . should be granted only if there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable minds could differ. In deciding such a question, every favorable inference which may reasonably be drawn from the evidence should be accorded the party against whom the motion is made.

*Morales v. Am. Honda Motor Co.,* 151 F.3d 500, 506 (6th Cir. 1998) (internal citations omitted).

"Questions as to the weight and credibility to be given to the evidence are reserved for the jury."

*Hyman & Armstrong, P.S.C. v. Gunderson*, 279 S.W.3d 93, 106 (Ky. 2008).

**A.      Sufficiency of the Evidence of Liability**

Kentucky has adopted the definition of strict products liability in the Restatement (Second) of Torts.  *See Dealers Transp. Co. v. Battery Distrib. Co.*, 402 S.W.2d 441, 446–47 (Ky. 1965). Under the Restatement, a manufacturer will be liable in strict liability when it sells a product "in a defective condition unreasonably dangerous to the user or consumer or to his property." *Worldwide Equip., Inc. v. Mullins*, 11 S.W.3d 50, 55 (Ky. Ct. App. 1999) (quoting Restatement (Second) of Torts § 402A (1965)).  "The prevailing interpretation of 'defective' is that the product does not meet the reasonable expectations of the ordinary consumer as to its safety."  *Ulrich v. Kasco Abrasives Co.*, 532 S.W.2d 197, 200 (Ky. 1976) (internal quotation and citation omitted).  Courts have identified three types of product defects: manufacturing defects, design defects, and warning defects. *Edwards v. Hop Sin, Inc.*, 140 S.W.3d 13, 15 (Ky. Ct. App. 2003).

In addition to showing that the product was defective, the plaintiff must also show that the product's defective condition was the legal cause of its injury.  To show legal causation under Kentucky law, a plaintiff must show that the defendant's conduct was "a substantial factor in bringing about the harm."  *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 77 (Ky. 2010) (quoting

14

Restatement (Second) of Torts § 431 (1965)). If circumstantial evidence is used to show causation, it must "tilt the balance from possibility to probability" that the defendant's conduct was indeed a substantial factor. *King*, 209 F.3d at 893 (internal quotation marks and citation omitted).

Defendant makes three arguments in support of its claim that the evidence before the jury was insufficient as a matter of law.[5] First, Defendant argues that Plaintiffs' expert, William Mers Kelly, did not establish that the condition of the fan/light assembly constituted a manufacturing defect. "[A] manufacturing defect is defined as a deviation from the product's design that creates an unreasonable risk of harm." *Wright v. Gen. Elec. Co.*, 242 S.W.3d 674, 682 (Ky. Ct. App. 2007). Defendant argues that because Mers Kelly did not testify specifically as to Defendant's manufacturing processes, Plaintiffs could not show that the fan/light assembly manufactured by Defendant deviated from the product's intended design.

Mers Kelly testified in detail about the sharp edge he observed on the metal bracket removed from the fan/light assembly. He testified that such a sharp edge was, in his opinion, caused by manufacturing tools that had worn to an unacceptable degree. Defendant could have presented rebuttal evidence about its own manufacturing processes. It could have introduced photographs of

---

[5] Plaintiffs argue that Defendant did not preserve this issue for appeal because it did not formally present it to the district court during the colloquy on its Rule 50(a) motion. Rule 50(a) requires the movant to "specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). A motion under this Rule need not be stated with "technical precision." *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 492 (6th Cir. 2008) (quoting *Kusens v. Pascal Co.*, 448 F.3d 349, 361 (6th Cir. 2006)). While Defendant's motion was perhaps not a model of precision, it clearly requested relief on the basis of insufficient evidence. Counsel asked the district court to enter judgment "based on the fact that the evidence does not support enough to go to a jury." The court and opposing counsel were made aware of the law and facts Defendant believed entitled it to judgment as a matter of law. Therefore, the claim was adequately presented and preserved.

its equipment and expert testimony to show that it was not worn as Mers Kelly had opined. It could have presented documents to show the accepted tolerance for sharpness in its metal brackets and compared that information to the photographs of the bracket in question. Defendant did none of these, and the evidence presented was sufficient to allow the jury to conclude that a defect in the manufacturing process resulted in an edge that was unacceptably sharp.

Second, Defendant argues that Mers Kelly's testimony was subjective and not based on proven facts. Courts are understandably wary of allowing unanchored, hypothetical expert testimony to constitute the exclusive foundation of a plaintiff's case. Doing so would be too unreliable. *See Ky. Trust Co. v. Gore*, 192 S.W.2d 749, 752 (Ky. 1946) (finding that expert testimony must be supported by "proven facts"). However, when an expert "buttress[es] [his] opinion by reference to the proved circumstances in a case," *Fields v. W. Ky. Gas Co.*, 478 S.W.2d 20, 22 (Ky. 1972), or bases his opinion on "personal examinations and tests," *Columbia Gas of Ky., Inc. v. Tindall*, 440 S.W.2d 785, 789 (Ky. 1969), the jury is entitled to credit that opinion. Mers Kelly testified that he had personally examined the fan/light assembly on several occasions, that he had touched the edge of the metal bracket with his thumb, and that it felt sharp. His conclusion was not merely a subjective impression, nor was it speculation. His opinion was based on his direct observations and experience, and it was not unreasonable for the jury to rely on that opinion. *See Fields*, 478 S.W.2d at 22 (finding that the jury must determine the weight to give to expert testimony).

Third, Defendant argues that Plaintiffs' case was circumstantial and that they did not adequately eliminate other possible causes of the fire. "Circumstantial evidence has no magic quality. It is measured by the same standards of probity and credibility as direct evidence." *Perkins*

*v. Trailco Mfg. & Sales Co.*, 613 S.W.2d 855, 857 (Ky. 1981) (internal quotation marks omitted). "[L]egal causation may be established by a quantum of circumstantial evidence from which a jury may reasonably infer that the product was a legal cause of the harm." *Holbrook v. Rose, Ky.*, 458 S.W.2d 155, 157 (Ky. 1970). Defendant suggests that Plaintiffs' entire case rested on circumstantial evidence, but in fact their case was based on a combination of direct and circumstantial evidence. Through Mers Kelly's testimony, Plaintiffs put forward direct evidence that the bracket in the burned fan/light assembly was sharp to the touch and that the wires in the unburned fan/light from the neighboring bathroom stall exhibited notching. Those two pieces of direct evidence led Mers Kelly—and, apparently, the jury—to infer that similar notching had taken place in the offending fan/light assembly, leading to the fire. The evidence, both direct and circumstantial, presented by Plaintiffs created a sufficient factual showing that properly precluded the district court from granting Defendant's Rule 50(a) motion on the issue of liability. *See Turpin v. Stanley Schulze & Co.*, No. 2008-CA-000298, 2009 WL 875218, at *6 (Ky. Ct. App. Apr. 3, 2009) (upholding a denial of a motion for summary judgment, even in the absence of direct evidence of a manufacturing defect or causation, because sufficient evidence was presented to tilt the balance "from possibility to probability").

### B.      Sufficiency of the Evidence of Damages

Damages must be proved "with as much certainty as the nature of the tort and the circumstances permit." Restatement (Second) of Torts § 912 (1979). Plaintiffs should not be held to "a standard of mathematical precision." *Ellison*, 32 S.W.3d at 79. Plaintiffs, through two experts, presented evidence of the estimated cost to repair the property. One of Plaintiffs' experts, William

C. Ward, Jr., testified about the cost of repairing the property and the appropriate amount to deduct for depreciation in order to arrive at the sum necessary to restore the building to substantially the same condition as before the fire.

"[W]here it is reasonably certain that damage has resulted, mere uncertainty as to the amount does not preclude one's right of recovery or prevent a jury decision awarding damages." *Landwehr v. Mitchell*, No. 2009-CA-000517-MR, 2010 WL 985226, at *5 (Ky. Ct. App. Mar. 19, 2010) (citing *Roadway Express, Inc. v. Don Stohlman & Assocs., Inc.*, 436 S.W.2d 63, 65 (Ky. 1968)). Based on the evidence presented, the jury determined that the proper measure of damages to the property was the full amount included in Ward's estimate. Defendant cross-examined Ward as to the problems with his estimate, and it was for the jury alone to evaluate Ward's credibility. *See Hyman & Armstrong, P.S.C.*, 279 S.W.3d at 106 ("Questions as to the weight and credibility to be given to the evidence are reserved for the jury."). Defendant could easily have introduced evidence of its own relating to the issue of depreciation, but it chose not to do so. Drawing every favorable inference in Plaintiffs' favor, the available evidence was sufficient to allow the jury to determine the reasonable cost of restoring the building. Therefore, the district court did not err when it denied Defendant's Rule 50(a) motion on the issue of damages.

## CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's judgment and orders.