HELENE N. WHITE, Circuit Judge,
concurring.
I concur in all but Part II.B of the majority opinion. I write separately because I do not agree that the issue whether a criminal defendant must show bad-faith conduct by the government to justify even the mildest of spoliation sanctions — a permissive adverse-inference instruction— is settled in this circuit. Further, it is unnecessary to decide the question in this case.
I.
The majority relies on United States v. Boxley, 373 F.3d 759 (6th Cir. 2004), and *546 United States v. Spalding, 438 Fed.Appx. 464 (6th Cir. 2011). Boxley, however, relied on Nationwide Mutual Fire Insurance Co. v. Ford Motor Co., 174 F.3d 801 (6th Cir. 1999), for its understanding of spoliation sanctions. Boxley, 373 F.3d at 762. And Nationwide, following then-current circuit precedent, applied state law regarding spoliation sanctions. 174 F.3d at 804 (“The rules that apply to the spoiling of evidence and the range of appropriate sanctions are defined by state law; in this case, Ohio”) (citation omitted). In Adkins v. Wolever, 554 F.3d 650 (6th Cir. 2009) (en banc), however, the court rejected the application of state law to spoliation issues, explaining that “a spoliation ruling is evidentiary in nature and federal courts generally apply their own evidentiary rules in both federal question and diversity matters.” Id. at 652 (citation omitted). In doing so, the court overruled “earlier opinions that applied state law to determine whether spoliation ■sanctions were available,” including Nationwide specifically. Id. at 651.[1] Thus, because Boxley relied on Nationwide’s statement of Ohio law, it is not clear that the rule applied in Boxley correctly states the federal law applicable here.[2] Spalding was decided after Adkins, but Spalding relies exclusively on Boxley, and does not address the fact that Adkins overruled Nationwide. Spalding, 438 Fed.Appx. at 467. Further, Spalding is unpublished.
It is also not clear whether or to what extent we should rely on cases from outside this circuit, and where that should lead us. True, the First Circuit has stated that a spoliation instruction in a criminal case “usually makes sense only where the evidence permits a finding of bad faith destruction; ordinarily negligent destruction would not support the logical inference that the evidence was favorable to the defendant.” United States v. Laurent, 607 F.3d 895, 902 (1st Cir. 2010) (emphasis in original) (citation omitted). However, the Laurent court went on to say that “the case law is not uniform in the culpability needed for the instruction,” and “negligent destruction of a particular piece of evidence likely to be exculpatory” might justify a spoliation instruction. Id. at 902-03 (citations omitted); see United States v. Flores-Rivera, 787 F.3d 1, 19 & n.13 (1st Cir. 2015) (stating that the government’s negligent destruction of probative evidence did not justify a new trial, but that the defendants “likely would have been entitled to a spoliation instruction” had they requested one).
The Fifth Circuit’s decision in United States v. Wise, 221 F.3d 140, 156 (5th Cir. 2000), which the majority also cites, has little persuasive value. Wise is a criminal case, and it does conclude that evidence of bad faith is necessary to support a spolia *547 tion instruction. Id. But Wise relies on civil cases for its conclusions about spoliation sanctions. Id. And it appears that at least at the time Wise was decided, bad faith was required to justify a spoliation instruction in civil cases in the Fifth Circuit. Id. By contrast, and as the majority recognizes, bad faith is not required for a spoliation instruction in a civil case in our circuit. Beaven v. U.S. Dep’t of Justice, 622 F.3d 540, 554 (6th Cir. 2010).
Further, as the majority acknowledges, the Ninth Circuit is split on this very issue. Compare. United States v. Romo-Chavez, 681 F.3d 955, 961 (9th Cir. 2012) (“a criminal defendant must establish ... that the evidence was destroyed in bad faith”), with United States v. Sivilla, 714 F.3d 1168, 1173 (9th Cir. 2013) (holding that “[b]ad faith is the wrong legal standard for a remedial jury instruction,” and, instead, “[cjourts must balance the quality of the Government’s conduct against the degree of prejudice to the accused, where the government bears the burden of justifying its conduct and the accused of demonstrating prejudice”) (citation and quotation marks omitted).
As for other circuits, the Eighth Circuit has assumed — but not actually decided— that its bad-faith requirement for a spoliation instruction in a civil case also applies in criminal cases. See United States v. Davis, 690 F.3d 912, 922 (8th Cir. 2012), cert. granted, judgment vacated on other grounds, — U.S. —, 133 S.Ct. 2852, 186 L.Ed.2d 903 (2013). The Eleventh Circuit has not decided whether spoliation instructions based on the government’s failure to preserve evidence are ever appropriate in criminal cases. United States v. Lanzon, 639 F.3d 1293, 1302 (11th Cir. 2011) (declining to decide the question because the defendant would not be entitled to an instruction under the civil standard, which in the Eleventh Circuit includes a bad-faith requirement). And the Second, Third, Fourth, Seventh, Tenth, and D.C. Circuits do not appear to have addressed this issue.
All of this is to say that, given the circumstances, Boxley, Spalding, and the cases from other circuits do not provide a definitive answer to the question whether bad-faith conduct by the government is a necessary predicate to a district court in this circuit granting a permissive adverse-inference instruction in a criminal case.
II.
Under the facts of this case, it is not necessary to decide which standard should apply to requests for a spoliation instruction in a criminal case, because even if the district court erred by not giving a spoliation instruction, that error was harmless.
“Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.” Fed. R. Crim. P. 52(a). Braswell does not contend that the spoliation issue here is of constitutional magnitude, so any error is harmless if there “is ‘a preponderance of the evidence that the error did not materially affect the verdict.’” United States v. Hendrickson, 822 F.3d 812, 824 & n.5 (6th Cir. 2016). (emphasis in original) (quoting United States v. Kilpatrick, 798 F.3d 365, 378 (6th Cir. 2015)).
Given the circumstances of this case, that standard is easily satisfied. A permissive adverse-inference instruction is “simply a formalization of what the jurors would be entitled to do even in the absence of a specific instruction.” West v. Tyson Foods, Inc., 374 Fed.Appx. 624, 635 (6th Cir. 2010). At trial, defense counsel was permitted to, and did, argue strenuously that the jurors should infer that the missing photographs would have shown something unfavorable to the government. Braswell is correct that an instruction *548 from the court generally carries more weight than argument from counsel. See Arch Ins. Co. v. Broan-NuTone, LLC, 509 Fed.Appx. 453, 459 (6th Cir. 2012). Here, however, defense counsel laid the groundwork for his argument by successfully using the dashcam video to force Officer Piazza to reverse his testimony and admit he had taken photographs of the evidence. If the jurors were not willing to draw inferences in Braswell’s favor after this dramatic and effective cross-examination, there is no reason to think a spoliation instruction would have changed their minds.
Braswell argues that the photographs might have shown that there were fingerprints on the gun — fingerprints that Officer Piazza never identified — and thus a spoliation instruction was necessary to compensate for the photographs’ absence. But Officer Piazza testified that there were visible fingerprints on the gun. Photographs showing the same thing would not have added anything to Braswell’s defense. Nor would Braswell have been helped by an instruction telling the jurors they could infer something that Officer Piazza had already admitted. In truth, there was simply no favorable inference to be drawn from the destruction of the photographs.[3] Further, as the majority’s opinion explains, there is substantial evidence connecting Braswell to the gun. True, the evidence is largely circumstantial. But Braswell’s recorded statements are powerful evidence of guilt. And nothing the jurors might have inferred from the photographs — or their absence — would have changed what Bras-well said to himself when he saw the officers discover the gun and the marijuana.
In sum, the absence of a spoliation instruction did not affect Braswell’s substantial rights and was, at most, harmless error.

. The majority states that the Nationwide court applied Ohio law because Nationwide was a diversity case. See Maj. Op. at 534 n.2. In fact, prior to Adkins, this court applied state spoliation law in all civil cases, even those based on federal-question jurisdiction. Adkins, 554 F.3d at 652 (“Our circuit’s application of state law to spoliation sanctions in federal question cases finds its origins in Welsh v. United States, 844 F.2d 1239 [(6th Cir. 1988)], a Federal Tort Claims Act case.”); see, e.g., Beck v. Haik, 377 F.3d 624, 628 (6th Cir. 2004) (applying Michigan spoliation law in a § 1983 civil rights action), overruled by Adkins, 554 F.3d 650.

. The majority concludes that Boxley remains good law because "Boxley can only logically be read as adopting the bad faith requirement for spoliation instructions, described in Nationwide, for all criminal cases in this circuit,” especially since Boxley originated in the Western District of Tennessee. Maj. Op. at 534 n.2. But Boxley does not even acknowledge the choice-of-standard question, or any distinction between civil and criminal cases, much less analyze those issues. 373 F.3d at 762-63, It simply repeats the standards stated in Nationwide.

. Below, Braswell suggested the photographs might have shown that the gun had dirt or leaves on it, or that the marijuana was not fresh. Braswell does not raise those arguments on appeal. Regardless, Officer Piazza admitted under cross-examination that the gun was covered with leaves. And while the jurors might have inferred from the absence of the photographs that the marijuana was not as fresh as Officer Piazza said it was, there is no reason to think this would have changed the outcome of the trial, given Bras-well’s recorded statements and Officer Piazza’s otherwise uncontested description of events.