NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0484n.06

No. 16-6092

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Aug 21, 2017 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES |
| | ) | DISTRICT COURT FOR |
| LARRY BRASWELL, | ) | THE EASTERN |
| | ) | DISTRICT OF |
| Defendant-Appellant. | ) | TENNESSEE |
| | ) | |

BEFORE:    GUY, CLAY, and WHITE, Circuit Judges.

**CLAY, Circuit Judge.**  Defendant Larry Braswell was convicted of one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and was sentenced to 235 months' imprisonment.  On appeal, Defendant challenges both his conviction and his sentence.  Specifically, he challenges the district court's denial of the motion to suppress the evidence of the gun, as well as the sufficiency of the evidence.  Defendant further argues that the district court erred in not including a spoliation instruction in the jury instructions.  Defendant also contends that there was prosecutorial misconduct based on statements made by the government during closing arguments.  Finally, Defendant challenges his classification as an armed career criminal.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

BACKGROUND

On February 23, 2014, Chattanooga Police Officer Benjamin Piazza saw Defendant Larry Braswell walking away from the bushes in front of an abandoned house in a condemned public

housing project in Chattanooga, Tennessee. A car containing a female passenger was parked in front of the house. When Officer Piazza approached Braswell, he said he had come to the housing project to talk with his passenger, Jasmine Isom, and left the car in order to urinate in the bushes. Ms. Isom was visibly upset, and she told Officer Piazza that she thought she was going to jail. As Officer Piazza was talking to Braswell and Ms. Isom, he noticed a strong smell of marijuana. After searching the car with Braswell's consent and not finding anything, Officer Piazza concluded that the marijuana was either concealed in the car's center console or had just been removed from the car. The officer checked the status of Braswell's license and discovered that it had been revoked. Nevertheless, he told Braswell to leave the area and drive Ms. Isom home. He also told Braswell not to drive anymore until his license was reinstated and especially not to return to the area, or else he would go to jail.

After Braswell left, Officer Piazza returned to his patrol car, which was parked between two abandoned houses with its lights off, and began filling out paperwork regarding this interaction. Less than an hour later, another car entered the abandoned housing complex and drove along the same street where Officer Piazza had just encountered Braswell. It was now dark outside, and the car did not have its headlights on. The car also started to slow to a stop in front of the same house where Braswell had previously been seen. When Officer Piazza turned his patrol car's headlights on, the other vehicle also turned on its headlights and then drove away fairly rapidly. The car ran a stop sign in the process, after which Officer Piazza activated his emergency lights and pulled the vehicle over. Officer Piazza heard the driver say something such as "[W]ell, I guess I'm going to jail." (R. 136, Trial Tr., PageID #1852.) It turns out that Braswell was the driver, and this time he was accompanied by a male passenger.

Officer Piazza then arrested Braswell for driving on a revoked license. While conducting a search incident to that arrest, Officer Piazza found more than $1,100 in cash, as well as a digital scale covered in what appeared to be marijuana residue in Braswell's pocket. Braswell was placed in the back of the patrol car and read his *Miranda* rights. Officer Piazza and a K-9 officer then returned to the abandoned house where Officer Piazza first encountered Braswell walking away from the bushes after allegedly urinating. The drug-sniffing dog alerted several times on the bushes in front of that house. The officers searched the bushes and found a large bag containing approximately twenty-five grams of marijuana and a loaded .45 caliber handgun, "right on top of each other." (*Id.* at 1855, 1859.) The gun did not appear to have been there very long, since it was not rusted and did not have any dew or dirt on it. It did, however, have visible fingerprints on it. The officers, however, never tested the gun for fingerprints.

During the search of the abandoned property, Braswell was confined in the back of the patrol car. At various points, Braswell apparently mumbled to himself, and those statements were captured by a video recording device in the patrol car. Within seconds of the officers finding the gun and marijuana, Braswell, who had been intently watching the officers discover the contraband, said what sounded like "[Expletive], man . . . prints are all over this [expletive]." (*Id.* at 1879–81; Gov't Ex. 5 at 19:49:00.)

Braswell was indicted on May 28, 2014 for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Following the denial of multiple motions to suppress the evidence, Braswell proceeded to trial. A jury trial was held on September 29 and 30, 2015 and resulted in a guilty verdict. Braswell was sentenced to 235 months of imprisonment, as he was determined to be an armed career criminal. Judgment was entered on June 28, 2016, and this timely appeal followed.

## DISCUSSION

I.     **Suppression of the Evidence**

A.     **Standard of Review**

"When reviewing the district court's ruling on a motion to suppress," this Court "review[s] findings of fact for clear error and legal conclusions de novo." *United States v. Jackson*, 682 F.3d 448, 452 (6th Cir. 2012) (citing *United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007). "When the district court has denied the motion to suppress, we review all evidence in a light most favorable to the Government." *Id.* (quoting *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006)). "A factual finding is clearly erroneous when, although there may be evidence to support it, the reviewing court, utilizing the entire evidence, is left with the definite and firm conviction that a mistake has been committed." *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007) (quotation omitted). Factual findings are not clearly erroneous "where there are two permissible views of the evidence." *Id.* (alterations and quotation omitted). Furthermore, this Court gives "deference to the district court's assessment of credibility inasmuch as the court was in the best position to make such a determination." *United States v. Hill*, 195 F.3d 258, 264–65 (6th Cir. 1999).

B.     **Analysis**

"An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment. Accordingly, any evidence seized during an illegal traffic stop must be suppressed as fruits of the poisonous tree." *Jackson*, 682 F.3d at 453 (quoting *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008)). "It is well established that a police officer may lawfully stop a car when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime." *Id.* (citations omitted).

Before the trial, Braswell filed a motion to suppress the evidence based on a lack of probable cause for the traffic stop. In order to resolve the motion, the magistrate judge conducted a hearing at which only one witness, Officer Piazza, testified. The officer recounted his first interaction with Braswell, and then testified regarding the traffic violations he observed during their second encounter. Specifically, Officer Piazza stated that he noticed a green car driving down the street with its headlights off, even though it was dark outside. Officer Piazza began to follow the car in his own patrol car, which also did not have the headlights illuminated. When the car began to slow down in front of the abandoned house, Officer Piazza turned on his headlights. The car rapidly sped up and, after a short distance, turned on its headlights. The car then reached an intersection and ran a stop sign. Officer Piazza then turned on his blue lights and pulled Braswell over.

In order to rebut Officer Piazza's testimony, Braswell offered into evidence a video of the second encounter between Officer Piazza and himself, during which he allegedly committed the two traffic violations. This video did not show Braswell driving with his headlights off.[1] The magistrate judge, however, noted that the video "does show unequivocally that it was dark outside and that defendant ran through a stop sign making no effort to even slow down." (R. 72, R&R, PageID #583.) The magistrate judge further found Officer Piazza's testimony that Braswell had been driving without his headlights illuminated to be credible and agreed with Officer Piazza that it was dark outside and was at least thirty minutes after dusk when the incident occurred. Consequently, Braswell violated Tenn. Code Ann. § 55-9-406(a), which requires headlights to be illuminated when driving beginning thirty minutes after sunset. The

---

[1] According to Officer Piazza's testimony, videos recorded by the cameras in police cars are continuously recorded over until some triggering event occurs, such as the police officer illuminating his flashing lights. (*Id.* at 582–83.)

magistrate judge further found that Officer Piazza had probable cause to stop Braswell because he witnessed Braswell failing to stop at a stop sign, in violation of Tenn. Code Ann. § 55-8-149(c).

After reviewing Braswell's objections to the magistrate judge's Report and Recommendation, the district court largely accepted the magistrate judge's findings of facts and denied the motion to suppress. The district court deferred to the magistrate judge's determination that Officer Piazza's testimony was credible. After independently viewing the video of the encounter, the district court further determined that the magistrate judge "did not err in finding that it was very dark at the time Officer Piazza testified that Defendant was driving without his headlights on." (R. 77, Order on Mot. to Suppress, PageID # 608). Finally, in response to Braswell's argument that the video does not actually show him running a stop sign, the district court stated that "Defendant is correct to point out that the video first shows Defendant's car slightly after it had passed the stop sign in question." (*Id.*) The district court further stated, "The rate of speed at which Defendant's car was traveling at this point, however, coupled with Officer Piazza's credible testimony that he saw the Defendant run the stop sign, leads the Court to conclude that Officer Piazza had probable cause for the traffic stop." (*Id.* (footnote omitted).)

Relying largely on the video, Braswell continues to argue on appeal that there was no proof that he was driving without his headlights on or that he ran a stop sign. However, we find his argument unpersuasive. The magistrate judge, and later the district court, both found that Braswell had been driving without his headlights on when he was required to have them illuminated under Tennessee law. Both the magistrate judge and the district court also found that Braswell failed to stop at a stop sign. These factual determinations were largely based on the

magistrate judge's finding that Officer Piazza was credible. Such "[f]indings of fact anchored in credibility assessments are generally not subject to reversal upon appellate review." *United States v. Hudson*, 405 F.3d 425, 442 (6th Cir. 2005) (alteration in original) (quoting *United States v. Taylor*, 956 F.2d 572, 576 (6th Cir. 1992) (en banc)).

To the extent that this Court could overturn the credibility determination because "the testimony was implausible, internally inconsistent, or against the weight of the evidence, such that no reasonable fact-finder would credit it," *United States v. Miller*, 413 F. App'x 841, 843 (6th Cir. 2011) (quotation omitted), those circumstances are not present here. Contrary to Braswell's argument that the video contradicts Officer Piazza's testimony, we find that the video simply does not show the events in question, given that the video recording began after the alleged infractions had already occurred. Therefore the video neither confirms nor disproves the government's argument that Braswell was driving without his headlights and ran a stop sign.

Indeed, the video, to some extent, actually aids the government's argument. Specifically, the district court found that Braswell's car was traveling at a high rate of speed, which, in the district court's eyes, supported Officer Piazza's testimony that Braswell failed to stop at the stop sign. This evidence, coupled with the officer's credible testimony, supports the conclusion that the district court did not clearly err in determining that Braswell committed two traffic violations. Because these two traffic violations were supported by probable cause, the district court properly denied Braswell's motion to suppress the evidence obtained as a result of the traffic stop. *See Jackson*, 682 F.3d at 453.

## II.     Spoliation Jury Instruction

### A.     Standard of Review

"This Court reviews a district court's choice of jury instructions for abuse of discretion." *United States v. Ross*, 502 F.3d 521, 527 (6th Cir. 2007) (citing *United States v. Prince*, 214 F.3d 740, 761 (6th Cir. 2000)).  In so doing, "we review jury instructions as a whole to determine whether they fairly and adequately submitted the issues and applicable law to the jury." *United States v. Franklin*, 415 F.3d 537, 553 (6th Cir. 2005) (quoting *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991)).  A "refusal to deliver the requested instruction is reversible only if that instruction is (1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *Id.* (quoting *Williams*, 952 F.3d at 1512; and citing *United States v. Gibbs*, 182 F.3d 408, 432 (6th Cir. 1999)).

### B.     Analysis

Braswell argues that the district court abused its discretion in not including an instruction regarding spoliation of evidence by the police officers involved in this case.  Officer Piazza originally testified at trial that he did not take any photographs of the gun and marijuana while at the scene.  However, defense counsel subsequently played a video that revealed that Officer Piazza had taken pictures of the evidence on the hood of his car.  The district court ordered the government to turn over the photographs the next day.  When court reconvened the next morning, the government informed the court that the pictures could not be produced because they were taken on Officer Piazza's personal cell phone.  That phone was later given to Officer Piazza's child and dropped by the child in the bathtub.  The district court found that the evidence was not destroyed in bad faith, and that finding is not disputed on appeal.

Based on the loss of the photographs, Braswell proposed the following spoliation instruction for the district court:

> The government has a duty to gather, preserve, and produce at trial evidence which may possess exculpatory value. Such evidence must be of such a nature that Mr. Braswell would be unable to obtain comparable evidence through reasonably available means. The government has no duty to gather or indefinitely preserve evidence considered by a qualified person to have no exculpatory value, so that an as yet unknown defendant may later examine the evidence.

> If, after considering all the proof, you find that the government failed to gather or preserve evidence, the contents or qualities of which are at issue and the production of which would more probably than not be of benefit to Mr. Braswell, you may infer that the absent evidence would be favorable to Mr. Braswell.

(R. 140, Joint Stipulation, PageID #2145.) After this charge was rejected by the district court, based on the court's skepticism that the photographs constituted exculpatory evidence, Braswell suggested the First Circuit's pattern jury instruction for spoliation, which reads:

> If you find that [party] destroyed or obliterated a document that it knew would be relevant to a contested issue in this case and knew at the time it did so that there was a potential for prosecution, then you may infer (but you are not required to infer) that the contents of the destroyed evidence were unfavorable to [party].

(*Id.* at 2147 (alterations in original).) This instruction, too, was rejected by the district court.

On appeal, Braswell argues that the standard for spoliation instructions used in this Circuit for civil cases also applies in the context of a criminal case. That standard is as follows:

> A party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Flagg v. City of Detroit*, 715 F.3d 165, 177 (6th Cir. 2013) (quoting *Beaven v. U.S. Dep't of Justice*, 622, F.3d 540, 553 (6th Cir. 2010)). Braswell further argues that the "culpable state of

9

mind" includes negligence and recklessness, *see Beaven*, 622 F.3d at 554, which arguably were present here given Officer Piazza's failure to preserve the photographs.

Braswell also argues that, based on language in *Flagg*, once the district court finds that there was spoliation, the court is then required to give a spoliation instruction. *See Flagg*, 715 F.3d at 177 ("When the requirements for an adverse inference instruction are met, the district court should issue an instruction."). Braswell contends that the district court explicitly found spoliation, given the court's use of the term during the context of the charge conference. Thus, the district court erred by not including the mandatory instruction. However, in the alternative, Braswell argues that the district court abused its discretion in not giving a spoliation instruction, given that the three prongs listed above were all satisfied.

We find Braswell's argument unavailing. This Court has previously found that it was not an abuse of discretion for the district court, in a criminal case, to refuse to give a spoliation instruction based on the failure to preserve evidence in the absence of bad faith.[2] For example, in *United States v. Boxley*, 373 F.3d 759 (6th Cir. 2004), the defendant requested a spoliation instruction based on the government's failure to preserve fingerprints. *Id.* at 762. The Court

---

[2] According to the concurrence, because *Boxley* relied on *Nationwide Mutual Fire Insurance Co.*, a case which has since been overruled, *Boxley* has been abrogated as well. However, this logic does not hold up under closer scrutiny. *Nationwide* imported the bad faith standard from Ohio law, as it was a civil case based on diversity jurisdiction. 174 F.3d at 804. The case overruling it, *Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) (en banc), changed the standards we use when deciding civil cases based on diversity jurisdiction. As the concurrence notes, *Adkins* stated that this Court should no longer apply state law for evidentiary matters, but instead should apply federal evidentiary rules, including for spoliation instructions. *Id.* at 651–52. However, *Adkins* does not have any bearing on federal criminal cases, for which federal evidentiary rules always applied. *Boxley* can only logically be read as adopting the bad faith requirement for spoliation instructions, described in *Nationwide*, for all criminal cases in this circuit. This is all the more evident considering *Boxley* originated in the Western District of Tennessee, meaning Ohio state law could only have been persuasive authority. Thus, the fact that *Nationwide* was overruled does not impact the precedential value of *Boxley*, and we continue to apply its established test for spoliation instructions.

noted that "[s]poliation is defined as the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *Id.* (citing *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 804 (6th Cir. 1999), *overruled by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) (en banc)). The Court further found that there was little chance that the government could have preserved the fingerprints regardless of their methods. *Id.* More importantly, the Court noted that "intentional destruction" is "removal with the 'purpose of rendering it inaccessible or useless to the defendant in preparing its case; that is spoiling it.'" *Id.* (quoting *Nationwide*, 174 F.3d at 804.) In that case, as in Braswell's case here, "there is nothing to indicate that the officers did so in bad faith." *Id.* at 763. The Court ultimately agreed with the district court that "the most that has been shown is that the policemen did not maintain and control the evidence in a manner consistent with good police tactics. But there was no bad faith involved." *Id.* Based on that conclusion, coupled with the unlikelihood that the fingerprints could have been recovered regardless of the officers' actions, the Court determined that the jury instruction on spoliation was properly denied. *Id.*

Relying on the definition of spoliation announced in *Boxley*, this Court later concluded that a spoliation instruction was properly denied in a case involving the destruction of a McDonald's sandwich carton from which prints of the defendant were lifted. *United States v. Spalding*, 438 F. App'x 464, 465, 467 (6th Cir. 2011). The Court agreed that the required intent—namely, having "the purpose of rendering it inaccessible or useless to the defendant in preparing [his] case—was not present. *Id.* at 467 (alteration in original) (quoting *Boxley*, 373 F.3d at 762).

Other circuits similarly require a finding of bad faith in order to warrant a spoliation instruction in a criminal case. For example, the First Circuit has stated that a spoliation

instruction "usually makes sense only where the evidence permits a finding of bad faith destruction; ordinarily *negligent* destruction would not support the logical inference that the evidence was favorable to the defendant." *United States v. Laurent*, 607 F.3d 895, 902 (1st Cir. 2010). The Fifth Circuit also requires a showing of bad faith. *See United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000) (collecting cases). Similarly, the Ninth Circuit requires that, in order for a spoliation instruction to be given, "a criminal defendant must establish (1) that the evidence was destroyed in bad faith, and (2) that he was prejudiced by its destruction." *United States v. Romo-Chavez*, 681 F.3d 955, 961 (9th Cir. 2012) (citations omitted). *But see United States v. Fries*, 781 F.3d 1137, 1152 (9th Cir. 2015) (recognizing that there may be an intra-circuit split in the Ninth Circuit over whether bad faith is required for a spoliation instruction, but declining to resolve the issue).

Based on these cases, we hold that the district court did not abuse its discretion in denying Braswell's request to include a spoliation instruction to the jury. The district court explicitly found that Officer Piazza did not act in bad faith when he failed to preserve the photographs. While noting that the officer clearly was not diligent in his handling of evidence, the district court further opined, "I don't see any evidence that there was any tampering with evidence, any attempt to spoliate exculpatory evidence." (R. 137, at 2003.) As made clear in *Boxley*, spoliation only occurs when the party who destroyed the evidence acted with "the purpose of rendering it inaccessible or useless." 373 F.3d at 762. While the effect of Officer Piazza's actions was to render the photographs useless, the district court found that his actions were not undertaken in bad faith, but were instead the result of shoddy police work. Given these factual findings, to which this Court must defer, we agree that the spoliation instruction was not

required. Therefore the district court did not abuse its discretion in declining to give the spoliation instruction to the jury.

### III. Prosecutorial Misconduct

#### A. Standard of Review

"In reviewing a trial court's evidentiary determinations, this court reviews *de novo* the court's conclusions of law and reviews for clear error the court's factual determinations that underpin its legal conclusions." *United States v. Jenkins*, 345 F.3d 928, 935 (6th Cir. 2003) (quoting *United States v. Salgado,* 250 F.3d 438, 451 (6th Cir. 2001)). Admission of tape recordings is reviewed for abuse of discretion. *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983).

#### B. Analysis

Braswell argues that the district court abused its discretion by admitting the video and audio recording of his mumblings from the back of the patrol car. While Braswell admits that the admission of videotapes is within the sound discretion of the district court, he essentially argues that the tapes should have been excluded because the "unintelligible portions are so substantial as to render the recordings as a whole untrustworthy." *United States v. Robinson*, 707 F.3d 872, 876 (6th Cir. 1983) (quoting *United States v. Jones*, 540 F.2d 465, 470 (10th Cir. 1976)).

Braswell first points to the statements of the district court, as the court first appeared to agree with Braswell at the pre-trial suppression hearing that the tapes were unintelligible, stating, "I heard a couple of expletives in there, but I'll be honest, I didn't hear much more." (R. 42, Suppression Hr'g Tr., PageID #178.) Only after listening again did the court revise its assessment, explaining, "[w]ell, you know, that time, that time I heard, prints all over, it sounds

like." (*Id.*) At the same hearing, Braswell also introduced the testimony of a court reporter who stated that she was unable to understand or transcribe the recording. Given the district court's initial impressions and the statements of that court reporter, Braswell now argues that the district court abused its discretion in allowing the recording into evidence.

Braswell also argues that the prosecutor, in his closing statement, impermissibly stated what he thought was on the audio recording, even though the recording was unintelligible. Braswell notes that the district court had previously determined that a transcript could not be admitted given that large portions of the tape could not be transcribed. Therefore, only the recording itself was admitted into evidence and played for the jury. Despite the fact that a transcript was not admitted and the jury was supposed to determine for itself what was on the tape, the government argued the following in its closing statement:

> What does the video tell us, though[?] Defendant admits it. The defendant confesses. Watch the video. It was about 19:49:06 on the time, you'll see when Piazza says they found it. And three seconds later, remember the defendant can see it, he's watching out the window of the car, and we talked about that, three seconds later, the defendant cusses, cusses, says something about cussing about the gun, and my prints are all over that mf'r within three seconds of them finding it.

> Watch the video as well. And when I say that, listen to Exhibit 5, that's where it's isolated where you can just hear the defendant in the back of the car. It's easier to hear what he's saying. It's hard when both mikes are playing, but watch, also, listening to Exhibit 5 as he watches the officer walk and Piazza pointed to you on the left side of the screen where the bush was kind of right off where the video could see on the left side. And watch the defendant's reaction every time the officers walk over there to those bushes. Before he admits that his prints are on it and before they find the gun, he starts cussing every time they walk over near those bushes he's saying an expletive. He's admitting that his prints are on the gun.

Why was the gun not sent for fingerprints? Why do you need to when the defendant tells you that they're there? The circumstantial proof is very strong.

(R. 137, at 2022–23.)

Based on these statements, Braswell argues that the prosecutor impermissibly brought "to the attention of the jury facts not in evidence," and vouched for the credibility of the evidence. *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001). Moreover, Braswell claims that it was highly prejudicial for the prosecutor to state his interpretation of the recording, given that Braswell's alleged confession was the only direct evidence linking him to the gun. Thus, Braswell argues that the district court abused its discretion in allowing the government to argue that Braswell admitted his prints were all over the gun.

The government agrees that for a video to be properly admitted into evidence, it must be "audible and sufficiently comprehensible for the jury to consider the contents." *Robinson*, 707 F.2d at 876. However, the government argues that the recording was sufficiently clear to be admissible. Although the district court initially expressed skepticism that the recording was intelligible, the district court later concluded that tape was admissible because sections were "easily discernable." (R. 108, Order, PageID 1206–07.) The government also contends that the relevant portions of the tape can be understood. Noting that this Court generally "will leave rulings about admissibility undisturbed unless . . . left with the definite and firm conviction that the district court committed a clear error in judgment," *United States v. Dixon*, 413 F.3d 540, 544 (6th Cir. 2005), the government argues that the video was not so unintelligible as to make the district court's admission of the video a clear error in judgment.

As for the argument that the government impermissibly opined about what Defendant said on the recording, the government argues that it did not commit any misconduct. The government argues that its statements were not improper, given that it was "merely argu[ing] its

15

interpretation of the evidence which had been presented at trial." (Gov't Br. at 23.) It therefore contends that, "[o]nce the district court determined that the recording was admissible and played it for the jury, both sides were free to argue their interpretations of it during closing argument." (*Id.* at 24.)

We agree with the government that no misconduct requiring a new trial occurred. The following test applies for claims of prosecutorial misconduct: first, we determine "whether the prosecutor's conduct and remarks were improper." *Cristini v. McKee*, 526 F.3d 888, 899 (6th Cir. 2008) (quoting *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001)). If so, we then decide "whether the impropriety was flagrant and thus warrants reversal." *Id.* Flagrancy is examined by looking at the following for factors: "(1) whether the prosecutor's remarks or conduct tended to mislead the jury or prejudice the accused; (2) whether the remarks were isolated or extensive; (3) whether the remarks were accidentally or deliberately made; and (4) the overall strength of the evidence against the accused." *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005). This test is meant to reflect that prosecutorial misconduct must be "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial." *United States v. Bond*, 22 F.3d 662, 667 (6th Cir. 1994) (quoting *United States v. Payne*, 2 F.3d 706, 712 (6th Cir. 1993) (per curiam)).

Generally courts "afford wide latitude to a prosecutor during closing argument, analyzing disputed comments in the context of the trial as a whole." *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008). Prosecutors are also allowed to "forcefully assert reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005). Given this broad leeway, we conclude that the district court did not abuse its discretion in allowing the video to be admitted. After listening to the video recording, it is apparent that, while some of Braswell's

statements are unintelligible mutterings, others can be understood. Specifically, the relevant comment here, where Braswell allegedly admits that his prints are on the gun, can in fact be understood. Because portions of the tape can be understood, the district court did not incorrectly admit a tape that was too unintelligible to be trustworthy. Moreover, given that this Court "leave[s] rulings about admissibility undisturbed unless . . . left with the definite and firm conviction that the district court committed a clear error in judgment," *Dixon*, 413 F.3d at 544, we conclude that the video is not so clearly unintelligible as to warrant reversal.

We furthermore hold that the government did not commit prosecutorial misconduct when it stated its interpretation of Braswell's statements during closing arguments. Although Braswell argues that the prosecution, in effect, introduced a transcript when they were not allowed to, we do not agree. We first note that the government's statements were not clearly improper, as they reasonably could be characterized as making inferences from the admitted evidence. In addition, as noted above, Braswell can be heard on the recording saying something that sounds remarkably close to "prints all over that [expletive]." (Gov't Ex. 5 at 19:49:00.) Therefore, the government's statements were unlikely to prejudice the jury, given that they likely would have heard the same thing regardless of what the government said in its closing argument. Furthermore, the government only made the allegedly improper statements during its closing argument, and not before the jury had had the opportunity to listen to the tapes. The jury also had the opportunity to listen to the tapes repeatedly during their deliberation, and in fact, the government encouraged them to do so. Given the fairly isolated nature of the comments, as well as the likely lack of prejudice to Braswell, we conclude that the government's comments do not amount to prosecutorial misconduct that was so flagrant as to warrant reversal.

**IV.     Sufficiency of the Evidence**

**A.     Standard of Review**

This Court reviews a challenge to the sufficiency of the evidence supporting a criminal conviction *de novo*.  *United States v. Pritchett*, 749 F.3d 417, 430 (6th Cir. 2014).  This Court reviews a district court's decision to deny a motion for a new trial for clear and manifest abuse of discretion.  *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988).

**B.     Analysis**

A defendant challenging the sufficiency of the evidence "bears a very heavy burden." *United States v. Davis*, 397 F.3d 340, 344 (6th Cir. 2005) (citation omitted).  This Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* (citations omitted).  When engaging in this analysis, the court "neither independently weighs the evidence, nor judges the credibility of witnesses who testified at trial." *United States v. Howard*, 621 F.3d 433, 460 (6th Cir. 2010) (citation omitted).

Braswell argues that the jury's verdict was against the weight of the evidence because no evidence links him to the handgun he was charged with illegally possessing.  Specifically, no one saw him drop or place anything in the bushes.  In addition, no one testified that they had seen him with the handgun or the marijuana accompanying it.  The gun was also not located in Braswell's car or house, but instead it was in the bushes in front of an abandoned house. Therefore, according to Braswell, it was unreasonable for the jury to infer that he possessed the handgun, and the verdict was the result of impermissible inference-stacking.

In support of his argument, Braswell contrasts *United States v. Lowe*, 795 F.3d 519 (6th Cir. 2015), with *United States v. Garcia*, 758 F.3d 714 (6th Cir. 2014).  In *Lowe*, this Court

determined that it was unreasonable to infer that the defendant had downloaded child pornography even though the defendant owned the laptop on which the images were found and used a nickname close to his real name when downloading software and visiting websites. 795 F.3d at 523. Because two other people had access to the laptop, the Court determined that the evidence was insufficient to show that the defendant was the one who downloaded the child pornography. *Id.* at 523–24. In contrast, the evidence in *Garcia* was strong enough to support a conviction for being a felon in possession of a firearm where an officer saw items fall out of the defendant's pocket as he fled from the officers. 758 F.3d at 721. The gun was found in fresh snow, with the handle and barrel buried in the snow but the cylinder lying on top of the snow. *Id.* The jurors were also allowed to infer that the defendant's flight indicated that he had possessed the firearm. *Id.*

In comparing these two cases, Braswell argues that his case is similar to *Lowe*. Specifically, like the laptop that others had access to, other had driven by the area where the gun and handgun were found. In addition, Officer Piazza had credibility issues, given his incorrect testimony that he did not take pictures at the scene when the evidence revealed that he did. Therefore, Braswell argues that the jury was not allowed to "(1) link Mr. Braswell's presence near an abandoned house with a bag of marijuana, and then (2) link the discovery of that bag to a handgun found nearby, in order to reach a verdict beyond a reasonable doubt." (Def.'s Br. at 38.)

We disagree. The evidence in the instant case was indeed sufficient to support the conviction, given that all reasonable inferences must be drawn in favor of the government. The evidence shows that Braswell was seen walking away from the bushes where the gun and marijuana were found. Braswell's car strongly smelled of marijuana, such that Officer Piazza

thought marijuana was either still present or had just been there. Braswell was given a break when he was allowed to drive away despite his revoked license. Nevertheless he returned to the area less than an hour later, after switching cars, even though he was told that if he returned he would likely go to jail. Therefore, it was reasonable for the jury to infer that Braswell returned to the abandoned house, risking jail, for an important purpose, such as to retrieve the gun and the marijuana. Furthermore, Braswell was found with a substantial amount of cash on him, as well as digital scales with marijuana residue. The marijuana was very fragrant, like the marijuana smell from the first car, and found lying directly on top of the firearm. Moreover, when the officers found the marijuana with the gun, Braswell uttered something that sounded a lot like, "prints all over that [expletive]." (Gov't Ex. 5 at 19:49:00.)

Given the inferences that can be drawn from that evidence, it was not unreasonable for the jury to conclude that Braswell possessed the gun. While the government's case could have been stronger, this Court does not weigh the evidence or "consider the potential magnitude of the evidence not presented." *Garcia*, 758 F.3d at 721. Instead, looking at the evidence in the light most favorable to the government, it is apparent that impermissible inference-stacking did not occur here. Indeed, the circumstantial evidence all points to a rational inference that Braswell had been in possession of the firearm. Thus, the district court did not err in denying Defendant's motion for acquittal or motion for a new trial based on the lack of sufficient evidence, and we affirm Braswell's conviction.

## V. Designation as an Armed Career Criminal

### A. Standard of Review

This Court reviews *de novo* "whether a conviction qualifies as a 'violent felony'" under the Armed Career Criminal Act (the "ACCA"). *United States v. Hockenberry*, 730 F.3d 645,

663 (6th Cir. 2013) (citing *United States v. Johnson*, 707 F.3d 655, 658 (6th Cir. 2013)); *see also United States v. Eubanks*, 617 F.3d 364, 366 (6th Cir. 2010) (reviewing *de novo* whether a conviction that the defendant argued should have been expunged qualified for purposes of the ACCA).

### B.    Analysis

The ACCA provides, in pertinent part:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1).

Braswell argues that he was improperly designated an armed career criminal for two reasons.  First, he contends that two of his four convictions in Tennessee for aggravated robbery or attempted aggravated robbery are void under Tennessee law, meaning they cannot be counted for purposes of the ACCA.  Second, he argues that aggravated robbery and attempted aggravated robbery under Tennessee law are not categorically violent felonies and thus do not count as predicate crimes under the ACCA.  Each of these arguments is addressed in turn below.

### 1.    Voidness of Two of Defendant's Convictions for Aggravated Robbery

Braswell argues that two of his four convictions, specifically the two aggravated robberies committed on June 30, 1994 and July 1, 1994, are void under Tennessee law and therefore were improperly included as predicate offenses for determining whether he is an armed career criminal.  Braswell first notes that, for purposes of the ACCA, "[w]hat constitutes a conviction of such a crime," meaning a "crime punishable by imprisonment for a term exceeding

one year," "shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20). In this case, the two relevant crimes occurred and were prosecuted in Tennessee, meaning Tennessee law controls.

Braswell next contends that these two convictions are void under Tennessee law. He notes that, as is apparent on the face of his guilty plea for three counts of aggravated robbery and one count of attempted especially aggravated robbery, he was sentenced to concurrent sentences for all four crimes pursuant to a plea agreement. However, Braswell contends that his sentences were required, at least in part, to be consecutive sentences instead of concurrent sentences. Braswell committed the third and fourth aggravated burglaries, which occurred in June and July, while out on bail for the first two crimes—the aggravated robbery committed on March 2, 1994, and the attempted especially aggravated robbery committed on March 8, 1994. Under Tennessee law, "[i]n any case in which a defendant commits a felony while the defendant was released on bail . . . and the defendant is convicted of both offenses, the trial judge shall not have the discretion as to whether the sentences shall run concurrently or cumulatively, but shall order that the sentences be served cumulatively." Tenn. Code Ann. § 40-20-111(b). The Supreme Court of Tennessee has recognized that sentences imposed in contradiction of § 40-20-111(b) are illegal. *McLaney v. Bell*, 59 S.W.3d 90, 93 (Tenn. 2001), *overruled in part on other grounds by Summers v. State*, 212 S.W.3d 251 (Tenn. 2007).

Moreover, under Tennessee law, the illegality of the sentence affects both the underlying conviction as well as the sentence, as Braswell received the concurrent eight year sentences as part of a guilty plea. The Supreme Court of Tennessee has recognized that "[w]hen a defendant bargains for and receives an illegal sentence, the defendant will have the option of resentencing on the original plea or withdrawal of the plea and recommencement of the prosecution." *Smith v.*

*Lewis*, 202 S.W.3d 124, 129 (Tenn. 2006). The court further clarified that "where 'the sentence bargained for is otherwise illegal, the defendant is entitled to withdraw the plea.'" *Id.* (quoting *McLaney*, 59 S.W.3d at 95). Therefore, according to Braswell, because his sentences for the two later aggravated robberies were illegal and were the result of a plea bargain, his convictions are voided in their entirety, given that he has the right to withdraw the plea altogether. Consequently, Braswell argues that his convictions should not be considered as predicate offenses for the ACCA given that they have no legal effect in Tennessee.[3] Notably, however, Braswell has not actually obtained relief from the Tennessee courts in relation to his claimed illegal sentence.

We hold that the district court correctly determined that Braswell is unable to challenge his state aggravated robbery convictions in the context of a federal sentencing. As we have previously recognized, the Supreme Court, in *Custis v. United States*, 511 U.S. 485 (1994), "held that a defendant could not collaterally attack a state court conviction used for purposes of enhancement under the Armed Career Criminal Act unless the challenge was based on a violation of the right to counsel." *United States v. Aguilar-Diaz*, 626 F.3d 265, 269 (6th Cir. 2010) (citing *Custis*, 511 U.S. at 496). Indeed, this Court "has interpreted *Custis* as recognizing right-to-counsel violations as the sole non-statutory grounds on which a collateral attack may be entertained at sentencing." *Id.* at 270. This rule has routinely been applied by this Court, including in *United States v. Lalonde*, 509 F.3d 750 (6th Cir. 2007), in which a defendant argued that his prior Kentucky theft conviction was invalid because it was based on a guilty plea entered

---

[3] Indeed, Braswell points to several cases where the Tennessee Court of Criminal Appeals noted that facially invalid judgments cannot be used to enhance punishments in subsequent Tennessee prosecutions. *See State v. Posey*, 99 S.W.3d 141, 144 (Tenn. Crim. App. 2002); *Clifton v. State*, No. W2004-01385-CCA-R3-HC, 2005 WL 1363104, at *5 (Tenn. Crim. App. June 9, 2005).

*in abstentia.*[4]  *Id.* at 767.  While recognizing that the defendant's prior conviction likely was invalid as a matter of Kentucky law, we held:

> Nevertheless, no Kentucky court had declared Lalonde's 1989 conviction invalid prior to his sentencing in the instant case.  Thus, because Lalonde's challenge to his conviction was not based upon an alleged violation of the right to counsel, the district court was bound . . . not to allow Lalonde to collaterally challenge the validity of the conviction at sentencing. . . . Accordingly, we find that, even if Lalonde is correct in asserting the invalidity of his prior state law conviction, the district court properly included this conviction in its calculation of Lalonde's criminal history category.

*Id.* at 768.

Similarly, in *Aguilar-Diaz*, this Court again determined that *Custis* prevented a defendant from collaterally attacking his prior state court convictions as part of a federal sentencing.  626 F.3d at 269.  In that case, the defendant argued that a prior Ohio conviction was void because the state court failed to impose required post-release supervision as part of his sentencing.  *Id.* at 267.  However, after finding that the defendant's claim was "quite similar" to the claim rejected in *Lalonde*, the Court determined that the defendant's claim was "precluded as a collateral attack on a state conviction." *Id.* at 270.

Braswell argues that *Custis* does not, in fact, prevent him from challenging his state court convictions during sentencing.  First, Braswell argues that *Custis* is inapplicable to cases where the issue is what counts as a "conviction," given that *Custis* addressed only cases where it was assumed that there was a prior conviction.  For support, Braswell cites this Court's decision in *United States v. Houston*, 813 F.3d 282 (6th Cir. 2016), in which the Court addressed whether a Tennessee conviction was properly considered a predicate under the ACCA's definition of

---

[4] *Lalonde* involved a challenge to the district court's calculation of the defendant's criminal history score, not whether the defendant was an armed career criminal.  509 F.3d at 766. However, *Lalonde* applied the rule announced in *Custis*, which specifically applies to the ACCA. *Id.* at 767 (applying *Custis*, 511 U.S. at 487).

"conviction," given that the state conviction was still in the process of being appealed. *Id.* at 292. Braswell argues that the fact that the Court in *Houston* did not make reference to *Custis* reveals that *Custis* does not apply to the case at hand.

We find Braswell's arguments unavailing. The Court in *Houston* was not deciding whether the defendant was an armed career criminal, but was instead tasked with determining whether a prior Tennessee conviction, which was still pending on direct appeal in state court, was a conviction such that the defendant was prohibited from possessing a firearm. 813 F.3d at 292. The defendant in that case was not trying to argue that the conviction was void or invalid for some reason, but just that the timing of the federal and state cases meant that the Tennessee conviction did not make him a felon in possession because his felony conviction was not final and it therefore was not illegal for him to possess a firearm. *Id.* Thus, the Court in that case had no reason to discuss *Custis*.

Defendant also argues that his challenge is authorized under *Custis* because it is authorized by statute—specifically that his challenge is allowed based on the definition of "conviction" in § 921(a)(20). While it is true that, under *Custis*, "a defendant may collaterally attack a prior conviction used for purposes of sentence enhancement only if (1) such attack is provided by statute, or (2) such attack is a constitutional one premised on a lack of counsel," *United States v. Reed*, 141 F.3d 644, 652 (6th Cir. 1998), the Supreme Court was contemplating statutes such as 21 U.S.C. § 851, which "sets forth specific procedures allowing a defendant to challenge the validity of a prior conviction used to enhance the sentence for a federal drug offense." *Custis*, 511 U.S. at 491. The Supreme Court further opined that "[t]he language of § 851(c) shows that when Congress intended to authorize collateral attacks on prior convictions at the time of sentencing, it knew how to do so. Congress' omission of similar language in

§ 924(e) indicates that it did not intend to give defendants the right to challenge the validity of prior convictions under this statute." *Id.* at 492. After examining the relevant statutory provisions, we conclude that the definitional section that applies to the ACCA, codified in § 921, is not the sort of statute that contains the express authorization to challenge prior convictions contemplated in *Custis*. Instead, the clear language of *Custis* holds that prior convictions cannot be collaterally attacked through a sentencing for being an armed career criminal pursuant to § 924(e).

Braswell also attempts to distinguish his case from *Aguilar-Diaz*, given differences in Ohio and Tennessee law regarding void convictions. Braswell argues that it was important that, in *Aguilar-Diaz*, only the *sentence* was considered void under Ohio law and not the underlying determination of guilt. 626 F.3d at 268. In Tennessee, by contrast, Braswell's entire conviction, including both the sentence and the determination of guilt, is considered void because the illegal sentence was bargained for in a plea deal. *Smith*, 202 S.W.3d at 129.

This argument, too, is unpersuasive. First, *Aguilar-Diaz* did not rely solely on the fact that the underlying determination of guilt was still in place when determining that *Custis* barred the defendant's attack on his prior convictions. In fact, the Court specifically noted that "it is not necessary for us to determine whether Aguilar-Diaz's forgery conviction is void in Ohio or, if it is, whether it would still be valid for federal sentencing purposes." 626 F.3d at 269. Furthermore, Judge Batchelder wrote separately, in her words, to "highlight an ambiguity in Ohio case law," given that the Ohio Supreme Court has not clarified whether only the sentence is void, or both the sentence and the determination of guilt. *Id.* at 271. Therefore, *Aguilar-Diaz* cannot be distinguished based on the fact that the underlying determination of guilt was still intact in that case.

Moreover, in *Custis*, the Supreme Court noted that the definition of "conviction" in § 921(a)(20) provided that "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter." 511 U.S. at 491 (quoting 18 U.S.C. § 921(a)(20)). The Court found that "[t]he provision that a court may not count a conviction 'which has been . . . set aside' creates a clear negative implication that courts *may* count a convictions that has *not* been set aside." *Id.* (quoting 18 U.S.C. § 921(a)(20)). This language indicates that Braswell's prior convictions were properly counted, given that no Tennessee court has set them aside based on their voidness or illegality.

Finally, this Court's disposition in *United States v. Watt*, 162 F. App'x 486 (6th Cir. 2006), does not mandate the opposite outcome. In that case, the defendant made the same argument as Braswell in this case—that his prior convictions were invalid under Tennessee law because he was sentenced concurrently when he was required to be sentenced consecutively. *Id.* at 489. The defendant there ultimately obtained relief from his career offender enhancement in federal court. However, *Watt* is different for two key reasons. First, the defendant in that case actually had his state convictions set aside by the Tennessee state courts. *Id.* Second, *Watt* was a case brought pursuant to 28 U.S.C. § 2255, and not on direct appeal from a federal sentencing. *Id.* at 493. *Custis* specifically held that collateral attacks on prior convictions could not be made during federal sentencing proceedings, but noted that the prior convictions could be challenged on federal habeas review. 511 U.S. at 497. Therefore, the *Watt* Court found that "Watt followed the procedure contemplated by *Custis*. He successfully challenged his state convictions in state court, and only then did he seek § 2255 relief from the federal sentence enhancement that had been predicated on those convictions." 162 F. App'x at 493.

In contrast, Braswell here sought to challenge his prior convictions during a federal sentencing proceeding, which is specifically disallowed by *Custis*. Moreover, Braswell's convictions have not been set aside by any court in Tennessee, despite his argument that he clearly would be entitled to such relief.[5] We therefore hold that Braswell's prior convictions were properly counted as predicate offenses under the ACCA.[6]

## 2. Aggravated Robbery as Violent Felony Under the ACCA

Braswell also argues that his four convictions—three for aggravated robbery and one for attempt of especially aggravated robbery—do not qualify as violent felonies under the ACCA in light of *Johnson v. United States*, 559 U.S. 133, 140 (2010). However, Braswell admits that this argument is foreclosed based on binding circuit precedent and that he is only raising this argument here in order to preserve the issue for further appeal.

Indeed, this Court has repeatedly held that aggravated robbery under Tennessee law is a violent felony under the "use of force" clause of the ACCA. *See United States v. Gloss*, 661 F.3d 317, 319 (6th Cir. 2011); *United States v. Bailey*, 634 F. App'x 473, 476 (6th Cir. 2015). Therefore, the district court properly determined that Braswell's prior convictions for aggravated

---

[5] Braswell asserts that he cannot obtain relief in Tennessee given that he is no longer in custody and has already served his sentence. *See State v. Wooden*, 478 S.W.3d 585, 591 (Tenn. 2015); *State v. Brown*, 479 S.W.3d 200, 211–12 (Tenn. 2015). Indeed, Braswell applied for state post-conviction relief but was denied relief for just that reason. *State v. Braswell*, Nos. 201324, 201325, 203114, 203483 (Crim. Ct. Hamilton Cty. Tenn. Dec. 22, 2015), *available at* R. 111-4, PageID #1307. At the federal sentencing, defense counsel stated that Braswell's appeal of that decision was pending in the Tennessee courts. The record contains no further information regarding the state proceedings. Regardless, this Court, when faced with the same argument in *Aguilar-Diaz*, held that it is immaterial whether "state-based relief is currently available." 626 F.3d at 271.

[6] This holding is without prejudice to Braswell's ability to raise these issues in an appropriate § 2255 proceeding.

robbery and attempted especially aggravated robbery qualify as predicate offenses for purposes of the ACCA.

## CONCLUSION

For the reasons stated above, we **AFFIRM** Braswell's conviction and sentence for being a felon in possession of a firearm. Specifically, we conclude that the district court properly denied Braswell's motion to suppress the evidence obtained as result of the traffic stop. Moreover, the district court did not abuse its discretion by declining to give a spoliation instruction or by admitting the recording of Braswell into evidence. Similarly, the government did not commit misconduct so flagrant as to require reversal by characterizing what was said on the tape as a confession. Furthermore, the evidence was sufficient to find Braswell guilty. Finally, Braswell was properly considered an armed career criminal and correctly barred from challenging his state convictions in the context of a federal sentencing hearing.

**HELENE N. WHITE, Circuit Judge, concurring.** I concur in all but Part II.B of the majority opinion. I write separately because I do not agree that the issue whether a criminal defendant must show bad-faith conduct by the government to justify even the mildest of spoliation sanctions—a permissive adverse-inference instruction—is settled in this circuit. Further, it is unnecessary to decide the question in this case.

## I.

The majority relies on *United States v. Boxley*, 373 F.3d 759 (6th Cir. 2004), and *United States v. Spalding*, 438 F. App'x 464 (6th Cir. 2011). *Boxley*, however, relied on *Nationwide Mutual Fire Insurance Co. v. Ford Motor Co.*, 174 F.3d 801 (6th Cir. 1999), for its understanding of spoliation sanctions. *Boxley*, 373 F.3d at 762. And *Nationwide*, following then-current circuit precedent, applied *state* law regarding spoliation sanctions. 174 F.3d at 804 ("The rules that apply to the spoiling of evidence and the range of appropriate sanctions are defined by state law; in this case, Ohio.") (citation omitted). In *Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) (en banc), however, the court rejected the application of state law to spoliation issues, explaining that "a spoliation ruling is evidentiary in nature and federal courts generally apply their own evidentiary rules in both federal question and diversity matters." *Id.* at 652 (citation omitted). In doing so, the court overruled "earlier opinions that applied state law to determine whether spoliation sanctions were available," including *Nationwide* specifically. *Id.* at 651.[1] Thus, because *Boxley* relied on *Nationwide*'s statement of Ohio law, it is not clear that the

---

[1] The majority states that the *Nationwide* court applied Ohio law because *Nationwide* was a diversity case. *See* Maj. Op. at 10 n.2. In fact, prior to *Adkins*, this court applied state spoliation law in all civil cases, even those based on federal-question jurisdiction. *Adkins*, 554 F.3d at 652 ("Our circuit's application of state law to spoliation sanctions in federal question cases finds its origins in *Welsh v. United States*, 844 F.2d 1239 [(6th Cir. 1988)], a Federal Tort Claims Act case."); *see, e.g.*, *Beck v. Haik*, 377 F.3d 624, 628 (6th Cir. 2004) (applying Michigan spoliation law in a § 1983 civil rights action), *overruled by Adkins*, 554 F.3d 650.

rule applied in *Boxley* correctly states the federal law applicable here.[2]  *Spalding* was decided after *Adkins*, but *Spalding* relies exclusively on *Boxley*, and does not address the fact that *Adkins* overruled *Nationwide*.  *Spalding*, 438 F. App'x at 467.  Further, *Spalding* is unpublished.

It is also not clear whether or to what extent we should rely on cases from outside this circuit, and where that should lead us.  True, the First Circuit has stated that a spoliation instruction in a criminal case "usually makes sense only where the evidence permits a finding of bad faith destruction; ordinarily *negligent* destruction would not support the logical inference that the evidence was favorable to the defendant."  *United States v. Laurent*, 607 F.3d 895, 902 (1st Cir. 2010) (emphasis in original) (citation omitted).  However, the *Laurent* court went on to say that "the case law is not uniform in the culpability needed for the instruction," and "negligent destruction of a particular piece of evidence likely to be exculpatory" might justify a spoliation instruction.  *Id.* at 902–03 (citations omitted); *see United States v. Flores-Rivera*, 787 F.3d 1, 19 & n.13 (1st Cir. 2015) (stating that the government's negligent destruction of probative evidence did not justify a new trial, but that the defendants "likely would have been entitled to a spoliation instruction" had they requested one).

The Fifth Circuit's decision in *United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000), which the majority also cites, has little persuasive value.  *Wise* is a criminal case, and it does conclude that evidence of bad faith is necessary to support a spoliation instruction.  *Id.*  But *Wise* relies on civil cases for its conclusions about spoliation sanctions.  *Id.*  And it appears that at least at the time *Wise* was decided, bad faith was required to justify a spoliation instruction in civil cases in the Fifth Circuit.  *Id.*  By contrast, and as the majority recognizes, bad faith is not

---

[2] The majority concludes that *Boxley* remains good law because "*Boxley* can only logically be read as adopting the bad faith requirement for spoliation instructions, described in *Nationwide*, for all criminal cases in this circuit," especially since *Boxley* originated in the Western District of Tennessee.  Maj. Op. at 10 n.2.  But *Boxley* does not even acknowledge the choice-of-standard question, or any distinction between civil and criminal cases, much less analyze those issues.  373 F.3d at 762–63.  It simply repeats the standards stated in *Nationwide*.

required for a spoliation instruction in a civil case in our circuit. *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 554 (6th Cir. 2010).

Further, as the majority acknowledges, the Ninth Circuit is split on this very issue. *Compare United States v. Romo-Chavez*, 681 F.3d 955, 961 (9th Cir. 2012) ("a criminal defendant must establish . . . that the evidence was destroyed in bad faith"), *with United States v. Sivilla*, 714 F.3d 1168, 1173 (9th Cir. 2013) (holding that "[b]ad faith is the wrong legal standard for a remedial jury instruction," and, instead, "[c]ourts must balance the quality of the Government's conduct against the degree of prejudice to the accused, where the government bears the burden of justifying its conduct and the accused of demonstrating prejudice") (citation and quotation marks omitted).

As for other circuits, the Eighth Circuit has assumed—but not actually decided—that its bad-faith requirement for a spoliation instruction in a civil case also applies in criminal cases. *See United States v. Davis*, 690 F.3d 912, 922 (8th Cir. 2012), *cert. granted, judgment vacated on other grounds*, 133 S. Ct. 2852 (2013). The Eleventh Circuit has not decided whether spoliation instructions based on the government's failure to preserve evidence are ever appropriate in criminal cases. *United States v. Lanzon*, 639 F.3d 1293, 1302 (11th Cir. 2011) (declining to decide the question because the defendant would not be entitled to an instruction under the civil standard, which in the Eleventh Circuit includes a bad-faith requirement). And the Second, Third, Fourth, Seventh, Tenth, and D.C. Circuits do not appear to have addressed this issue.

All of this is to say that, given the circumstances, *Boxley*, *Spalding*, and the cases from other circuits do not provide a definitive answer to the question whether bad-faith conduct by the

government is a necessary predicate to a district court in this circuit granting a permissive adverse-inference instruction in a criminal case.

## II.

Under the facts of this case, it is not necessary to decide which standard should apply to requests for a spoliation instruction in a criminal case, because even if the district court erred by not giving a spoliation instruction, that error was harmless.

"Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a). Braswell does not contend that the spoliation issue here is of constitutional magnitude, so any error is harmless if there "is 'a *preponderance of the evidence* that the error did not materially affect the verdict.'" *United States v. Hendrickson*, 822 F.3d 812, 824 & n.5 (6th Cir. 2016). (emphasis in original) (quoting *United States v. Kilpatrick*, 798 F.3d 365, 378 (6th Cir. 2015)).

Given the circumstances of this case, that standard is easily satisfied. A permissive adverse-inference instruction is "simply a formalization of what the jurors would be entitled to do even in the absence of a specific instruction." *West v. Tyson Foods, Inc.*, 374 F. App'x 624, 635 (6th Cir. 2010). At trial, defense counsel was permitted to, and did, argue strenuously that the jurors should infer that the missing photographs would have shown something unfavorable to the government. Braswell is correct that an instruction from the court generally carries more weight than argument from counsel. *See Arch Ins. Co. v. Broan-NuTone, LLC*, 509 F. App'x 453, 459 (6th Cir. 2012). Here, however, defense counsel laid the groundwork for his argument by successfully using the dashcam video to force Officer Piazza to reverse his testimony and admit he had taken photographs of the evidence. If the jurors were not willing to draw

inferences in Braswell's favor after this dramatic and effective cross-examination, there is no reason to think a spoliation instruction would have changed their minds.

Braswell argues that the photographs might have shown that there were fingerprints on the gun—fingerprints that Officer Piazza never identified—and thus a spoliation instruction was necessary to compensate for the photographs' absence. But Officer Piazza testified that there were visible fingerprints on the gun. Photographs showing the same thing would not have added anything to Braswell's defense. Nor would Braswell have been helped by an instruction telling the jurors they could infer something that Officer Piazza had already admitted. In truth, there was simply no favorable inference to be drawn from the destruction of the photographs.[3] Further, as the majority's opinion explains, there is substantial evidence connecting Braswell to the gun. True, the evidence is largely circumstantial. But Braswell's recorded statements are powerful evidence of guilt. And nothing the jurors might have inferred from the photographs— or their absence—would have changed what Braswell said to himself when he saw the officers discover the gun and the marijuana.

In sum, the absence of a spoliation instruction did not affect Braswell's substantial rights and was, at most, harmless error.

---

[3] Below, Braswell suggested the photographs might have shown that the gun had dirt or leaves on it, or that the marijuana was not fresh. Braswell does not raise those arguments on appeal. Regardless, Officer Piazza admitted under cross-examination that the gun *was* covered with leaves. And while the jurors might have inferred from the absence of the photographs that the marijuana was not as fresh as Officer Piazza said it was, there is no reason to think this would have changed the outcome of the trial, given Braswell's recorded statements and Officer Piazza's otherwise uncontested description of events.